UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN C. LYLES SR.,

               Plaintiff,

v.

STATE FARM FIRE AND CASUALTY
COMPANY,

               Defendant.

Case No. 2:20-cv-10657

HONORABLE STEPHEN J. MURPHY, III

_____/

## OPINION AND ORDER DENYING MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR A NEW TRIAL [58]

Plaintiff John C. Lyles sued Defendant State Farm Fire and Casualty Company in Genesee County Circuit Court for breach of contract and violation of the Michigan Uniform Trade Practices Act. ECF 1, PgID 6–10. Defendant removed the case. *Id.* at 1–3. The case proceeded to trial, and a jury found for Defendant. ECF 55; 57. Plaintiff then moved for judgment notwithstanding the verdict under Federal Rule of Civil Procedure 50(b) or for a new trial under Rule 59. ECF 58. Defendant responded. ECF 61. For the following reasons, the Court will deny the motion.[1]

## LEGAL STANDARD

"No later than [twenty-eight] days after the entry of judgment . . . [a] movant may file a renewed motion for judgment as a matter of law" Fed. R. Civ. P. 50(b). A court may grant a renewed motion for judgment as a matter of law if "the court finds

_____

[1] Based on the parties' briefing, the Court will resolve the motion on the briefs without a hearing. *See* Fed. R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2),

that a reasonable jury would not have a legally sufficient evidentiary basis to find [the way it did]." Fed. R. Civ. P. 50(a)(1). "In a diversity action such as this, a [S]tate law standard of review is applied when a Rule 50(b) motion is based on a challenge to the sufficiency of the evidence necessary to support the jury's verdict." *In re Brown,* 342 F.3d 620, 626–27 (6th Cir. 2003). The Michigan standard is that "[i]f reasonable jurors could honestly have reached different conclusions, the motion should [] be[] denied. If reasonable jurors could disagree, [the court does not have] the authority to substitute its judgment for that of the jury." *Matras v. Amoco Oil Co.,* 424 Mich. 675, 681–82 (1986) (footnote omitted). Thus, "judgment as a matter of law is only appropriate when, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party." *Tisdale v. Fed. Express Corp.,* 415 F.3d 516, 527 (6th Cir. 2005) (cleaned up).

Under Rule 59(a), "[t]he [C]ourt may, on motion, grant a new trial . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." "[T]he authority of trial judges to grant new trials" under Rule 59(a) "is large." *Gasperini v. Ctr. for the Humanities, Inc.,* 518 U.S. 415, 433 (1996). Indeed, "[t]he trial judge in the federal system has discretion to grant a new trial if the verdict appears to the judge to be against the weight of the evidence." *Id.* (cleaned up).

## DISCUSSION

Plaintiff moved for relief under Rule 50(b) and Rule 59 based on three grounds: the verdict was inconsistent; the jury reached an impermissible compromise verdict; and the verdict was against the great weight of the evidence. ECF 58, PgID 354–63. The Court will consider each ground in turn.

I.   <u>Inconsistent Verdict</u>

"When a jury returns a verdict which is inconsistent, the trial court must attempt to reconcile the verdict. Where a verdict cannot be reconciled, a new trial must be granted." *Ferlito v. Johnson & Johnson Prod., Inc.*, 771 F. Supp. 196, 201 (E.D. Mich. 1991) (citing *Hopkins v. Coen,* 431 F.2d 1055, 1059 (6th Cir. 1970)), *aff'd sub nom.*, *Ferlito v. Johnson & Johnson*, 983 F.2d 1066 (6th Cir. 1992). But "even if the answers to jury interrogatories and the verdict do conflict, federal law favors upholding the verdict if there exists some legal basis, supported by the evidence, upon which the verdict could be based." *Innovation Ventures, LLC v. N2G Distrib., Inc.*, No. 08-CV-10983, 2012 WL 1402818, at *6 (E.D. Mich. Apr. 23, 2012), *aff'd*, 763 F.3d 524 (6th Cir. 2014) (cleaned up).

Plaintiff argued that the verdict was inconsistent for two reasons. First, Plaintiff argued that "Ms. Braun testified that the mistakes in the submitted estimates and inventories were not the type of misrepresentations or concealments that resulted in the denial of a claim." ECF 58, PgID 354. Second, Plaintiff argued that "[t]he jury . . . did not determine if Mr. Lyles . . . suffered an accidental loss to his home." *Id.* at 355.

The first argument fails because the testimony of one witness does not render a verdict inconsistent. The premise of a motion to overturn a verdict as inconsistent is that the verdict is *internally inconsistent*, not that the verdict is inconsistent with the testimony of a single witness. *See Ferlito*, 771 F. Supp. at 201. And there was a legal basis, supported by evidence, on which the jury verdict could have been based. *See Innovation Ventures, LLC*, 2012 WL 1402818, at *6. Indeed, the jury examined the evidence and determined that Plaintiff had made material misrepresentations such that he could not recover under the contract. ECF 55, PgID 341; *see* Exhibit 1, Page 30[2] ("This policy is void as to you . . . if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after the loss."). Thus, the jury verdict was not inconsistent. Because there was a legal basis supported by evidence for the jury verdict, the first argument raised by Plaintiff falls short.

The second argument also fails because question two and four on the verdict form were independent of one another. *Compare* ECF 55, PgID 340, *with id.* at 341. Accordingly, it was not inconsistent for the jury to leave question two blank but to answer "yes" to question four. As written in the second question on the verdict form, Plaintiff had to prove that he suffered an accidental loss. *See* Exhibit 1 Page 12 ("[State Farm] will pay for *accidental* direct physical loss to the property."). And as written in question four on the verdict form, the language of the policy clearly stated

---

[2] The parties submitted a copy of the parties' insurance contract to the Court as Plaintiff's Exhibit B. A copy of Plaintiff's Exhibit B is an exhibit to the present order. The Court will refer to it as Exhibit 1.

4

that "[t]his policy is void as to you . . . if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after the loss." Exhibit 1, Page 30. Simply put, the jury found the policy to be void based on the evidence presented at trial. And that issue lacks any connection to the question of whether Plaintiff suffered an accidental loss under the policy. Thus, the jury's decision to leave question two, whether Plaintiff suffered an accidental loss, blank but to find that Plaintiff intentionally concealed a material fact is consistent. *See* ECF 55, PgID 341. The verdict is therefore consistent, and the first ground for relief in the motion raised by Plaintiff must be denied.

## II.    Compromised Verdict

"It is a recognized duty of courts to set aside verdicts which do not represent the judgment of the jury but which are clearly compromise verdicts; but it is equally well recognized that the record must make it clear that the jury reached the result by splitting differences." *Niemi v. Ford Motor Co.*, 127 Mich. App. 811, 814 (1983) (cleaned up). Plaintiff argued that "[g]iven the jury's inability to reach a conclusion as to [] substantive questions [two and three] . . . it must be concluded that their verdict was a compromise." ECF 58, PgID 358. Plaintiff contended that the two days of deliberation and abnormalities in the Court's schedule, which resulted in a one-week gap in the deliberations, are evidence that the jury compromised. *Id.* at 358–59. But "the proposition that this jury engaged in some sort of compromise is pure speculation." *Campbell v. Gause*, No. 10-11371, 2019 WL 1434302, at *4 (E.D. Mich.

Mar. 31, 2019). The Court respects but cannot quite follow the logic of Plaintiff's argument. The record is certainly not "clear" that the jury "reached the result by splitting differences." *Niemi*, 127 Mich. App. at 814 (quotation omitted). And the fact that the jurors skipped questions two and three, which they apparently could not agree upon, but answered question four is strong evidence that their agreement on question four was genuine and not the result of compromise. ECF 61, PgID 393. Because the record is not clear that the jury returned a verdict that resulted from improper compromise, the Court will decline to grant Plaintiff relief based on that ground.

III.   <u>Verdict Against Great Weight of Evidence</u>

Plaintiff next argued that "the verdict returned in this case was against the great weight of the evidence." ECF 58, PgID 361. Plaintiff cited nine pieces of evidence and testimony that he believed greatly weigh against the verdict. *Id.* at 361–62. The Sixth Circuit follows a "policy of reluctance to overturn the jury's verdict" based on the sufficiency of the evidence. *Barnes v. Owens–Corning Fiberglas Corp.*, 201 F.3d 815, 821 (6th Cir. 2000) (citations omitted). And "new trials are not to be granted on the grounds that the verdict was against the weight of the evidence 'unless that verdict was unreasonable.'" *S.E.C. v. Conaway*, 698 F. Supp. 2d 771, 851 (E.D. Mich. 2010) (quoting *Holmes v. City of Massillon*, 78 F.3d 1041, 1047 (6th Cir. 1996)). "[I]f a reasonable juror could reach the challenged verdict, a new trial is improper." *Id.* (citation omitted).

None of the evidence Plaintiff cited went unrebutted. For example, David Kozma, a public adjustor Plaintiff hired, was impeached, and his opinion on the damages Plaintiff suffered was undercut by cross-examination. Indeed, cross-examination of Mr. Kozma revealed that it was his assistant, not him, who tallied the personal property damaged by the fire. And Mr. Kozma admitted that he did not closely review his assistant's work before he submitted the list of damaged property. He also admitted that her work contained errors. Moreover, Mr. Kozma could not explain how he calculated the value of some of the items of personal property; that is, he could not explain why he valued a television that was nearly twenty years old as though it were brand new.

The jury also reviewed photographs that purported to show items that Plaintiff claimed were destroyed—such as a mattress, bedroom furniture set, children's toys, and clothing—that were apparently unharmed. And Defendant presented direct and circumstantial evidence that Plaintiff misrepresented his suffered losses. For instance, Defendant presented direct and circumstantial evidence that Plaintiff filed an insurance claim for pillows, clothing, and a television *that he did not own*. Defendant also presented evidence that Plaintiff did not review the list of damaged property before affirming its accuracy. Besides which, the fact that the jury was empaneled for twenty days and deliberated for nearly three days is not evidence that its verdict is against the great weight of evidence. Instead, it shows that the jury carefully deliberated on and weighed all the evidence in the trial. After reviewing the evidence, the admitted exhibits, and portions of the transcript, the Court is convinced

that sufficient evidence supported the verdict. And the Court is not convinced that the verdict is against the great weight of the evidence or that the verdict was unreasonable. Thus, the third ground for relief fails, and the Court will deny the motion for a judgment notwithstanding the verdict or for a new trial.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Plaintiff John C. Lyles Sr.'s motion for judgment notwithstanding the verdict or for a new trial [58] is **DENIED**.

**SO ORDERED.**

<div style="text-align: right">

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

</div>

Dated: April 13, 2023

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 13, 2023, by electronic and/or ordinary mail.

<div style="text-align: right">

s/ David P. Parker
Case Manager

</div>

# EXHIBIT 1



## Certified Policy Record

I, the undersigned, do hereby confirm that I am custodian of the records pertaining to the issuance of policies by State Farm Fire and Casualty Company.

I certify that the attached documents represent a true and accurate record of the terms and conditions of Policy Number 22-EC-P053-9 including any endorsements, if applicable, for the policy term(s) 08/31/2018 to 08/31/2019 and insuring LYLES, JOHN SR based on available records.

_____

Lidia Diaz
Underwriter
Date:_____02/25/2020_____

**State Farm Fire and Casualty Company**
*A Stock Company With Home Offices in Bloomington, Illinois*

*2550 Northwestern Avenue*
*West Lafayette, IN 47906-1394*

AT3      H-04-1061-FA95  F  H  W
           000014    3201
LYLES, JOHN SR
1509 N CHEVROLET AVE
FLINT MI   48504-3121

### State Farm

# BALANCE DUE NOTICE

| AMOUNT DUE: | SEE NOTE |
|---|---|

**Payment is due by SEE NOTE**

**Policy Number:** 22-EC-P053-9

**Policy Period:**  12 Months
**Effective Dates:** AUG 31 2018 to AUG 31 2019

**Your State Farm Agent**
DAVID SUTHERLAND
10490 HIGHLAND RD STE B
HARTLAND MI  48353-2639

**Location of Residence Premises**
1509 N CHEVROLET AVE
FLINT MI  48504-3121

**Phone:** (810) 632-0500

ST-2B
01/09-2010

## IMPORTANT MESSAGES

Full payment by Date Due continues this policy to AUG 31 2019
Note: Do not pay. Payment is being made through State Farm Payment Plan. Account # 1301823104

*Thanks for letting us serve you!*

When you provide a check as payment, you authorize us either to use the information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic funds transfer, funds may be withdrawn from your account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution.

Prepared:  SEP 13 2018          ↓ Please fold and tear here ↓         04 05 2018 (o1F1002E)    Page  1 of 1

**Power To Pay**
**Your Way**
**Key code:** 23 2203 5469

 **Online**
statefarm.com/pay

 **Mobile**
Use the
State Farm mobile app

 **Call**
Automated Line: 800-440-0998
Your agent:  (810) 632-0500

 **Mail**
Send us a
check

 **Visit your**
**State Farm**
**agent**

HO - HOMEOWNERS

### State Farm

**Insured Name:** LYLES, JOHN SR
**Policy Number:** 22-EC-P053-9

0409811179

**AMOUNT DUE:**  **SEE NOTE**
**Please pay by**  **SEE NOTE**

Make payment to State Farm

| *For Office Use Only* | FIRE BAL DUE | | 1117 |
|---|---|---|---|
| 1S,8O | | | |

000057  160  I
N

800832100000000   322158601053902504>

**State Farm Fire and Casualty Company**
*A Stock Company With Home Offices in Bloomington, Illinois*

*2550 Northwestern Avenue*
*West Lafayette, IN 47906-1394*



H-04-1061-FA95   F  H  W
3201

LYLES, JOHN SR
1509 N CHEVROLET AVE
FLINT MI  48504-3121

ST-26
0209-2010

# DECLARATIONS

| | |
|---|---|
| **AMOUNT DUE:** | None |

**Payment is due by  BILLED THRU SFPP**

**Policy Number:**   22-EC-P053-9

**Policy Period:**   12 Months
**Effective Dates:** AUG 31 2018 to AUG 31 2019
The policy period begins and ends at 12:01 am standard
time at the residence premises.

## HOMEOWNERS POLICY

**Location of Residence Premises**
1509 N CHEVROLET AVE
FLINT MI  48504-3121

**Your State Farm Agent**
DAVID SUTHERLAND
10490 HIGHLAND RD STE B
HARTLAND MI  48353-2639

**Phone:** (810) 632-0500

| | |
|---|---|
| **Construction:** | Frame |
| **Year Built:** | 1927 |

**Automatic Renewal**
If the **POLICY PERIOD** is shown as **12 MONTHS,** this policy will be renewed automatically subject to the premiums, rules, and forms in effect for each succeeding policy period. If this policy is terminated, we will give you and the Mortgagee/Lienholder written notice in compliance with the policy provisions or as required by law.

## IMPORTANT MESSAGES

Number of Families: 01
Zone: 63 Subzone:  57
Customer Rating Index: 5441

### PREMIUM

| | |
|---|---|
| Annual Premium | $  3,417.00 |

*Your premium has already been adjusted by the following:*
 Claim Record

| | |
|---|---|
| **Total Premium** | **$  3,417.00** |

Prepared   SEP 13 2018

HO-2000
000058  160  I
N    1S,8O

Page  1 of 3

(o1F1080B)  04 04 2016



| NAMED INSURED | MORTGAGEE AND ADDITIONAL INTERESTS |
|---|---|
| LYLES, JOHN SR | |

### SECTION I - PROPERTY COVERAGES AND LIMITS

| Coverage | | Limit of Liability |
|---|---|---|
| A Dwelling | $ | 184,000 |
| Other Structures | $ | 18,400 |
| B Personal Property | $ | 138,000 |
| C Loss of Use | $ | 55,200 |

**Additional Coverages**

| | |
|---|---|
| Arson Reward | $1,000 |
| Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money | $1,000 |
| Debris Removal | Additional 5% available/$1,000 tree debris |
| Fire Department Service Charge | $500 per occurrence |
| Fuel Oil Release | $10,000 |
| Locks and Remote Devices | $1,000 |
| Trees, Shrubs, and Landscaping | 5% of Coverage A amount/$750 per item |

### SECTION II - LIABILITY COVERAGES AND LIMITS

| Coverage | | Limit of Liability |
|---|---|---|
| L Personal Liability (Each Occurrence) | $ | 100,000 |
| Damage to the Property of Others | $ | 1,000 |
| M Medical Payments to Others (Each Person) | $ | 1,000 |

### INFLATION

Inflation Coverage Index: 247.4

### DEDUCTIBLES

| Section I Deductible | | Deductible Amount |
|---|---|---|
| All Losses    1% | $ | 1,840 |

### LOSS SETTLEMENT PROVISIONS

A1 Replacement Cost - Similar Construction
B1 Limited Replacement Cost - Coverage B

SEP 13 2018

0 F 1001A-V

**22-EC-P053-9**



## FORMS, OPTIONS, AND ENDORSEMENTS

| HW-2122 | Homeowners Policy |
| HO-2546 | Home Systems Protect - $50000 |
| HO-2547 | Service Line Coverage - $10000 |
| HO-2511 | Back-Up Of Sewer Or Drain - |
| | 10% of Coverage A/$ 18,400 |
| HO-2543 | Energy Efficiency Upgrade End |
| Option JF | Jewelry and Furs $1,500 Each |
| | Article/$2,500 Aggregate |
| Option ID | Increase Dwlg Up to $  36,800 |
| Option OL | Ordinance/Law  10%/$  18,400 |

## ADDITIONAL MESSAGES

State Farm® works hard to offer you the best combination of price, service, and protection. The amount you pay for homeowners insurance is determined by many factors such as the coverages you have, the type of construction, the likelihood of future claims, and information from consumers reports.

Your premium was influenced by information from consumer reports:
 Time since most recent collection agency filing; Account with current delinquency reported; Percent of accounts paid as agreed in last 24 months to total accounts; Number of accounts opened in last 24 months.

You have the right to request, no more than once annually, that your policy be re-rated using a current credit-based insurance score. Re-rating could result in a lower rate, no change in rate, or a higher rate.
Please refer to the enclosed insert for additional details.

<div align="center"><strong>Other limits and exclusions may apply - refer to your policy</strong></div>

Your policy consists of these Declarations, the Homeowners Policy shown above, and any other forms and endorsements that apply, including those shown above as well as those issued subsequent to the issuance of this policy.

This policy is issued by the State Farm Fire and Casualty Company.

**Participating Policy**

You are entitled to participate in a distribution of the earnings of the company as determined by our Board of Directors in accordance with the Company's Articles of Incorporation, as amended.

In Witness Whereof, the State Farm Fire and Casualty Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

Secretary

President

22-EC-P053-9        000060



## HO-2546 HOME SYSTEMS PROTECTION

This endorsement modifies insurance provided under the following: HOMEOWNERS POLICY, CONDOMINIUM UNITOWNERS POLICY

### AGREEMENT

*We* agree to provide the insurance described in this endorsement in compliance with all applicable provisions (including but not limited to **DEFINITIONS**, **LOSSES NOT INSURED**, and **CONDITIONS**) of this policy. The most *we* will pay for loss or expense under this endorsement arising from any **one home system breakdown** is $50,000. Coverage provided under this endorsement does not increase any limit of liability under **SECTION I**.

### DEFINITIONS

For the purposes of this endorsement, the following definitions are added:

1. *"computer equipment"* means electronic data processing hardware and related peripheral equipment. This includes, but is not limited to, monitors and display screens, *media*, keyboards, printers, modems, and permanently installed wiring associated with such equipment.

2. Covered Home Equipment

   a. *"covered home equipment"* means property covered under **COVERAGE A – DWELLING** that:

      (1) generates, transmits, or utilizes energy; or

      (2) during normal usage, operates under vacuum or pressure, other than the weight of its contents.

      *Covered home equipment* may utilize conventional design and technology or new or newly commercialized design and technology.

   b. None of the following is *covered home equipment*:

      (1) supporting structure, cabinet, or compartment;

      (2) insulating material associated with *covered home equipment*;

      (3) water piping other than boiler feedwater piping, boiler condensate return piping, or water piping connected to a heating or air conditioning system;

      (4) wastewater piping or piping forming a part of a fire protective sprinkler or irrigation system;

      (5) buried or encased piping or buried vessels; however, interior buried or encased piping connected to a heating or air conditioning system is *covered home equipment*;

      (6) software or electronic data;

   (7) kitchen or laundry appliances, other than those permanently installed, including but not limited to, refrigerator, dishwasher, oven, stove, clothes washer, or clothes dryer;

   (8) *computer equipment* or any other electronic component used with such *computer equipment*, unless it is permanently installed as part of the *dwelling*; or

   (9) electronic entertainment equipment, including but not limited to, television or stereo equipment, or any electronic component used with such electronic entertainment equipment.

3. *"electronic circuitry"* means microelectronic components, including but not limited to, circuit boards, integrated circuits, computer chips, and disk drives.

4. *"electronic circuitry impairment"* means an accidental event involving *electronic circuitry* within *covered home equipment* that causes *covered home equipment* to suddenly lose its ability to function as it had been functioning immediately before such event. An *electronic circuitry impairment* must also meet each of the following conditions:

   a. *We* determine that the reasonable and appropriate remedy to restore such *covered home equipment's* ability to function is the replacement of one or more *electronic circuitry* components of the *covered home equipment*.

   b. The *covered home equipment* must be owned or used by an *insured*.

   c. None of the following is an *electronic circuitry impairment*:

      (1) Any condition that can be reasonably remedied by:

         (a) Normal maintenance, including but not limited to replacing expendable parts, recharging batteries, or cleaning;

         (b) Rebooting, reloading, or updating software or firmware; or

         (c) Providing necessary power or supply.

      (2) Any condition caused by or relating to:

         (a) Incompatibility of the *covered home equipment* with any software or equipment installed, introduced, or networked within the prior 30 days; or

Issued by State Farm Fire and Casualty Company
© 2010, 2012, 2015 The Hartford Steam Boiler Inspection and Insurance Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2016
CONTINUED

ST-26
04/09-2010

(b) Insufficient size, capability, or capacity of the **covered home equipment**.

(3) Exposure to adverse environmental conditions, including but not limited to, change in temperature or humidity, unless such conditions result in an observable loss of functionality.  Loss of warranty shall not be considered an observable loss of functionality.

5. **Equipment Breakdown**

a. **"equipment breakdown"** means an abrupt and accidental:

(1) mechanical breakdown;

(2) electrical breakdown; or

(3) bursting, cracking, or splitting;

of **covered home equipment** that results in direct physical damage and requires repair or replacement of all or part of the damaged **covered home equipment**.

b. None of the following is an **equipment breakdown**:

(1) rust, corrosion, erosion, deterioration, or gradual loss of efficiency or functionality of **covered home equipment**;

(2) leakage or seepage at or from any connection, valve, fitting, shaft, or seal;

(3) any programming error, programming limitation, computer virus, malicious code, loss of data, loss of access, loss of use, loss of functionality, or other condition within or involving data or **media** of any kind;

(4) complete or partial interruption of electrical power, fuel, or water supply, whether deliberate or accidental;

(5) any condition which can be corrected by resetting, recalibrating, or by the performance of maintenance; or

(6) cosmetic or other damage that does not impair functionality.

6. **"home system breakdown"** means an **equipment breakdown** or **electronic circuitry impairment**.

7. **"media"** means material on which data is recorded. This includes, but is not limited to, magnetic tapes, hard drives, optical storage drives, or CD/DVD drives.

8. **"one home system breakdown"** means: If an initial **home system breakdown** causes other **home system breakdowns**, all will be considered **one home system**

**breakdown**.  All **home system breakdowns** that are the result of the same event will be considered **one home system breakdown**.

**SECTION I – LOSSES INSURED**

For the purposes of this endorsement, the following is added, subject to the limit provided under the **AGREEMENT** section of this endorsement unless otherwise specified below:

1. **Loss to Covered Home Equipment**

**We** will pay for direct physical loss or damage to **covered home equipment** caused by a **home system breakdown** and that occurs on the **residence premises**. **We** will consider **electronic circuitry impairment** to be physical damage to **covered home equipment**.

**We** will not pay for any property that is not **covered home equipment** except for refrigerated property to the extent it is covered under **Spoilage**.

2. **Spoilage**

With respect to **your** refrigerated products, **we** will pay:

a. for physical damage due to spoilage caused by a **home system breakdown**;

b. any necessary expenses **you** incur to reduce the amount of loss under this coverage to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

**We** will pay up to $500 for **Spoilage**.  Any loss payable under both this endorsement and **SECTION I – ADDITIONAL COVERAGES**, **Refrigerated Products** under **your** policy, will be paid first in accordance with **SECTION I – ADDITIONAL COVERAGES**, **Refrigerated Products**.  Any payment under this endorsement will be excess over such coverage but no payments will be duplicated.

3. **Loss of Use**

Coverage for **Additional Living Expense** and **Fair Rental Value**, as defined under **COVERAGE C – LOSS OF USE**, is extended to the coverage provided by this endorsement.

4. **Expediting Expenses**

With respect to **your covered home equipment** that is damaged as the result of a **home system breakdown**, **we** will pay the reasonable extra cost to:

a. make temporary repairs; and

b. expedite permanent repairs or permanent replacement.

**SECTION I – LOSSES NOT INSURED**

For the purposes of this endorsement, **SECTION I – LOSSES NOT INSURED**, the following is added:

Issued by State Farm Fire and Casualty Company
© 2010, 2012, 2015 The Hartford Steam Boiler Inspection and Insurance Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2016
CONTINUED

22-EC-P053-9        000061

HO-2546
Page 3 of 4

4. *We* will not pay for loss, under any part of this coverage, that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through f. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, occurs on or off the *residence premises*, or occurs as a result of any combination of these:

   a. electrical power surge or brown out, whether or not caused by lightning;

   b. fire (including fire resulting from a *home system breakdown*) or water or other means used to extinguish a fire;

   c. explosion;

   d. lightning; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; breakage of glass; falling objects; weight of snow, ice, or sleet; freezing (caused by cold weather); collapse;

   e. vandalism, malicious mischief, or theft; or

   f. water or sewage resulting from a *home system breakdown*

For purposes of this endorsement, **SECTION I – LOSSES NOT INSURED**, items 2.b., 2.c., and 2.f. are replaced with the following:

   b. **Earth Movement**, meaning the sinking, rising, shifting, expanding, or contracting of earth, all regardless of whether combined with water, sewage, or any material carried by, or otherwise moved by the earth. Earth movement includes but is not limited to:

      (1) earthquake;

      (2) landslide, mudslide, or mudflow;

      (3) sinkhole or subsidence;

      (4) movement resulting from:

         (a) improper compaction;

         (b) site selection;

         (c) natural resource extraction activities; or

         (d) excavation

      (5) erosion;

      (6) pressure by surface or subsurface earth or fill; or

      (7) any volcanic activity, except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Volcanic Action.**

   c. **Water**, meaning:

      (1) flood;

      (2) surface water. However, surface water does not include water solely caused by the release of water from a swimming pool, spigot, sprinkler system, hose, or hydrant;

      (3) waves (including tidal wave, tsunami, and seiche);

      (4) tides or tidal water;

      (5) overflow of any body of water (including any release, escape, or rising of any body of water, or any water held, contained, controlled, or diverted by a dam, levee, dike, or any type of water containment, diversion, or flood control device);

      (6) spray or surge from any of the items c.(1) through c.(5) described above, all whether driven by wind or not;

      (7) water or sewage from outside the *residence premises* plumbing system that enters through sewers or drains, or water or sewage that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area;

      (8) water or sewage below the surface of the ground, including water or sewage that exerts pressure on, or seeps or leaks through a *building structure*, sidewalk, driveway, swimming pool, or other structure; or

      (9) material carried or otherwise moved by any of the water or sewage, as described in paragraphs c.(1) through c.(8) above.

   f. **Nuclear Hazard**, meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke.

**SECTION I – DEDUCTIBLE**

Subject to the limit provided under the **AGREEMENT** section of this endorsement, *we* will pay only that part of the loss that exceeds $500. No other deductible applies to this coverage.

**SECTION I – LOSS SETTLEMENT**

For the purposes of this endorsement, **SECTION I – LOSS SETTLEMENT** is replaced by:

Issued by State Farm Fire and Casualty Company
© 2010, 2012, 2015 The Hartford Steam Boiler Inspection and Insurance Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2016
CONTINUED

ST-28
0509-2010

1. ***Our*** payment for damaged covered property will be the smallest of:
   a. the applicable limit of liability;
   b. the cost to repair the damaged property;
   c. the cost to replace the damaged property with like kind, quality, and capacity on the same ***residence premises***; or
   d. the necessary amount actually spent to repair or replace the damaged property.
2. Except as described in **Environmental, Safety and Efficiency Improvements** below, ***you*** are responsible for the extra cost of replacing damaged property with property of a better kind or quality or of a different size or capacity.
3. If ***you*** do not repair or replace the damaged property within 24 months after the date of the ***home system breakdown***, then ***we*** will pay only the smaller of:
   a. the cost it would have taken to repair or replace at the time of the ***home system breakdown***; or
   b. the ***actual cash value*** at the time of the ***home system breakdown***.

**SECTION I – CONDITIONS**

For the purposes of this endorsement, the following conditions are added:

**Environmental, Safety and Efficiency Improvements**

If ***covered home equipment*** requires replacement due to a ***home system breakdown***, ***we*** will pay ***your*** additional cost to replace with equipment that is better for the environment, safer for people, or more energy or water efficient than the equipment being replaced.

However, ***we*** will not pay to increase the size or capacity of the equipment and ***we*** will not pay more than 150% of what the cost would have been to replace with like kind and quality. This condition does not apply to the replacement of component parts or to any property to which ***actual cash value*** applies and does not increase any of the applicable limits.

**Application of Coverage**

Any loss payable under both this endorsement and under ***your*** policy without considering the terms of this endorsement, will be paid first in accordance with the terms of ***your*** policy without consideration of the terms of this endorsement. Any payment under this endorsement will then be excess but no payments will be duplicated.

All other policy provisions apply.



Issued by State Farm Fire and Casualty Company
© 2010, 2012, 2015 The Hartford Steam Boiler Inspection and Insurance Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

(CONTINUED)

22-EC-P053-9        000062

HO-2547
Page 1 of 3

## HO-2547 SERVICE LINE COVERAGE

This endorsement modifies insurance provided under the following: HOMEOWNERS POLICY

### AGREEMENT

*We* agree to provide the insurance described in this endorsement in compliance with all applicable provisions (including but not limited to **DEFINITIONS**, **LOSSES NOT INSURED**, and **CONDITIONS**) of this policy. The most *we* will pay for loss or expense under this endorsement arising from any *one service line failure* is $10,000. Coverage under this endorsement does not increase any limit of liability under **SECTION I**.

### DEFINITIONS

For the purposes of this endorsement, the following definitions are added:

1. **Covered service line**

   a. *"covered service line"* means exterior underground piping and wiring, including permanent connections, valves, or attached devices providing one of the following services to *your residence premises*:

      (1) communications, including cable transmission, data transmission, internet access, and tele-communications;

      (2) compressed air;

      (3) drainage;

      (4) electrical power;

      (5) heating, including geothermal, natural gas, propane, and steam;

      (6) waste disposal; or

      (7) water.

   b. A *covered service line* must be owned by *you* or *you* must be responsible for its repair or replacement as required by law, regulation, or service agreement. Should repair or replacement be *your* responsibility, a *covered service line* ends at the precise location where *your* responsibility for such repair or replacement ends. However, in no event will a *covered service line* extend beyond the point of connection to the main service or utility line.

   c. *Covered service line* does not include:

      (1) that part of piping or wiring that runs through or under a body of water, including but not limited to, a swimming pool, pond, or lake;

      (2) that part of piping or wiring that runs through or under the dwelling or other structure;

      (3) piping or wiring that is not connected and ready for use;

      (4) septic systems, including leach fields, septic tanks, pumps, motors, or piping that runs from the septic tank to the leach fields, other than covered waste disposal piping running from *your dwelling* or other structure to a septic tank;

      (5) water wells, including well pumps or motors;

      (6) heating and cooling systems, including heat pumps; or

      (7) sprinkler system pumps, motors, or heads.

2. *"one service line failure"* means: If an initial *service line failure* causes other *service line failures*, all will be considered *one service line failure*. All *service line failures* that are the result of the same event will be considered *one service line failure*.

3. *"service line failure"* means a leak, break, tear, rupture, collapse, or arcing of a *covered service line* not otherwise excluded. A *service line failure* may be caused by, but is not limited to, the following perils:

   a. wear and tear, marring, deterioration, or hidden decay;

   b. rust or other corrosion;

   c. mechanical breakdown, latent defect, or inherent vice;

   d. weight of vehicles, equipment, animals, or people;

   e. vermin, insects, rodents, or other animals;

   f. artificially generated electrical current;

   g. freezing or frost heave;

   h. external force from a shovel, backhoe, or other form of excavation; or

   i. tree or other root invasion.

   *Service line failure* does not include blockage or low pressure of a *covered service line* when there is no physical damage to the *covered service line*.

### SECTION I – LOSSES INSURED

For the purposes of this endorsement, the following is added, subject to the limit provided under the **AGREEMENT** section of this endorsement:

1. **Damages to Covered Service Line**

   *We* will pay for physical loss or damage to *your covered service line* that is the direct result of a *service line failure*.



Issued by State Farm Fire and Casualty Company
© 2015 The Hartford Steam Boiler Inspection and Insurance Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2016
CONTINUED



ST-26
0609-2010

*We* will not pay:

a.  additional costs incurred for loss or increased usage of water, natural gas, propane, or any other service caused by or resulting from a *service line failure*;

b.  for loss or damage to a *covered service line* that is damaged while it is being installed, dismantled, or repaired. However, this shall not apply if a covered *service line failure* necessitated such installation, dismantling, or repair; or

c.  to clean up or remove contaminants or pollutants, hazardous waste, or sewage.

2.  **Excavation Costs**

    With respect to *your covered service line* that is damaged as the result of a *service line failure*, *we* will pay the necessary and reasonable excavation costs that are required to repair or replace the damaged *covered service line*.

3.  **Expediting Expenses**

    With respect to *your covered service line* that is damaged as the result of a *service line failure*, *we* will pay the reasonable extra cost to:

    a.  make temporary repairs; and

    b.  expedite permanent repairs or permanent replacement.

4.  **Loss of Use**

    Coverage for **Additional Living Expense** and **Fair Rental Value**, as described under COVERAGE C – LOSS OF USE, is extended to the coverage provided by this endorsement.

5.  **Outdoor Property**

    *We* will pay for *your* outdoor property, including but not limited to, trees, shrubs, plants, lawns, walkways, and driveways, that is damaged as a result of a *service line failure* or that is damaged during the excavation of *your covered service line* following a *service line failure*.

**SECTION I – LOSSES NOT INSURED**

For purposes of this endorsement, **SECTION I – LOSSES NOT INSURED**, the following is added:

4.  *We* will not pay for loss, under any part of this coverage, that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through c. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

a.  fire; or water or other means used to extinguish a fire;

b.  explosion;

c.  lightning; windstorm or hail; smoke; aircraft; riot or civil commotion; theft; breakage of glass;

For purposes of this endorsement, **SECTION I – LOSSES NOT INSURED**, items 2.b. and 2.c. are replaced with the following:

b.  **Earth Movement**, meaning the sinking, rising, shifting, expanding, or contracting of earth, all regardless of whether combined with water, sewage, or any material carried by, or otherwise moved by the earth. Earth movement includes but is not limited to:

    (1)  earthquake;

    (2)  landslide, mudslide, or mudflow;

    (3)  sinkhole or subsidence;

    (4)  movement resulting from:

         (a)  improper compaction;

         (b)  site selection;

         (c)  natural resource extraction activities; or

         (d)  excavation;

    (5)  erosion;

    (6)  pressure by surface or subsurface earth or fill; or

    (7)  any volcanic activity, except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Volcanic Action.**

    However, Earth Movement does not include frost heave.

c.  **Water**, meaning:

    (1)  flood;

    (2)  surface water. However, surface water does not include water solely caused by the release of water from a swimming pool, spigot, sprinkler system, hose, or hydrant;

    (3)  waves (including tidal wave, tsunami, and seiche);

    (4)  tides or tidal water;

    (5)  overflow of any body of water (including any release, escape, or rising of any body of water, or any water held, contained, controlled, or diverted by a dam, levee, dike, or any type of water containment, diversion, or flood control device);

Issued by State Farm Fire and Casualty Company
© 2015 The Hartford Steam Boiler Inspection and Insurance Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2016
CONTINUED

22-EC-P053-9       000063

(6) spray or surge from any of the items c.(1) through c.(5) described above, all whether driven by wind or not ;

(7) water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water or sewage that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area;

(8) water or sewage below the surface of the ground, including water or sewage that exerts pressure on, or seeps or leaks through a **building structure**, sidewalk, driveway, swimming pool, or other structure; or

(9) material carried or otherwise moved by any of the water or sewage, as described in paragraphs c.(1) through c.(8) above.

## SECTION I – DEDUCTIBLE

Subject to the limit provided under the **AGREEMENT** section of this endorsement, **we** will pay only that part of the loss that exceeds $500.  No other deductible applies to this coverage.

## SECTION I – LOSS SETTLEMENT

For the purposes of this endorsement, **SECTION I – LOSS SETTLEMENT** is replaced by:

1. **Our** payment for damaged covered property will be the smallest of:

   a. the limit of liability that applies to this endorsement;

   b. the cost to repair the damaged property;

   c. the cost to replace the damaged property on the same premises; or

HO-2547

d. the necessary amount actually spent to repair or replace the damaged property.

2. Except as described in **Environmental, Safety and Efficiency Improvements** below, **you** are responsible for the extra cost of replacing damaged property with property of a better kind or quality or of a different size or capacity.

3. **You** are responsible for the extra cost to alter or relocate **covered service lines**, unless such alteration or relocation is required by law or ordinance.

## SECTION I – CONDITIONS

For the purposes of this endorsement, the following conditions are added:

### Environmental, Safety and Efficiency Improvements

If a **covered service line** requires replacement due to a **service line failure**, **we** will pay **your** additional cost to replace with materials that are better for the environment, safer for people, or more energy or water efficient than the materials being replaced.

However, **we** will not pay to increase the size or capacity of the materials and **we** will not pay more than 150% of what the cost would have been to replace with like kind and quality. This condition does not increase the limit that applies to this endorsement.

### Application of Coverage

Any loss payable under both this endorsement and under **your** policy without considering the terms of this endorsement, will be paid first in accordance with the terms of **your** policy without consideration of the terms of this endorsement.  Any payment under this endorsement will then be excess but no payments will be duplicated.

All other policy provisions apply.

Issued by State Farm Fire and Casualty Company
© 2015 The Hartford Steam Boiler Inspection and Insurance Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2016



(CONTINUED)

## HO-2511 BACK-UP OF SEWER OR DRAIN ENDORSEMENT (Homeowners)

This endorsement modifies insurance provided under the following: HOMEOWNERS POLICY

The following is added to **SECTION I – ADDITIONAL COVERAGES**:

**Back-up of Sewer or Drain.** *We* will pay for accidental direct physical loss to the *dwelling* and covered personal property located within the *dwelling*, caused by back-up of water or sewage, subject to the following:

a.  The back-up must be directly and immediately caused solely by water or sewage:

   (1)  from outside the *residence premises* plumbing system that enters through a sewer or drain located inside the interior of the *dwelling*; or

   (2)  that enters into and overflows from within a sump pump, sump pump well, or any other system located inside the interior of the *dwelling* designed to remove subsurface water drained from the foundation area.

b.  Coverage does not apply to:

   (1)  losses resulting from *your* failure to:

     (a)  keep a sump pump or its related equipment in proper working condition; or

     (b)  perform the routine maintenance or repair necessary to keep a sewer or drain free from obstructions; or

   (2)  losses that occur or are in progress within the first 5 days of the inception of this endorsement. This limitation does not apply when:

     (a)  this endorsement is attached to a newly issued policy; or

     (b)  this endorsement is attached to replace another Back-Up of Sewer or Drain Endorsement. However, if this endorsement's coverage limits are higher than those of the endorsement it replaces, then the limitation described in (2) above applies only to the increase in coverage limits.

c.  If *you* request an increase to the coverage limit for this endorsement, the increased coverage limit does not apply to losses that occur or are in progress within the first 5 days of *your* request.

d.  The total limit of insurance provided by this endorsement will not exceed the amount determined by applying the Back-Up Of Sewer Or Drain percentage (%) shown in the *Declarations* to the COVERAGE A – DWELLING limit shown in the *Declarations*, as adjusted by the inflation coverage provisions of this policy. This is an additional amount of insurance.

e.  The deductible for each loss under this coverage is the amount shown in the *Declarations* under **Section I Deductible** for "Other Losses" or "All Losses", whichever applies.

For purposes of this endorsement only:

a.  **SECTION I – LOSSES INSURED**, item 12.b.(2) is deleted from the policy.

b.  **SECTION I – LOSSES NOT INSURED, Water** is replaced by:

   **Water**, meaning:

   (1)  flood;

   (2)  surface water. This does not include water solely caused by the release of water from a swimming pool, spigot, sprinkler system, hose, or hydrant;

   (3)  waves (including tidal wave, tsunami, and seiche);

   (4)  tides or tidal water;

   (5)  overflow of any body of water (including any release, escape, or rising of any body of water, or any water held, contained, controlled, or diverted by a dam, levee, dike, or any type of water containment, diversion, or flood control device);

   (6)  spray or surge from any of the items c.(1) through c.(5) described above, all whether driven by wind or not;

   (7)  water or sewage from outside the *residence premises* plumbing system that enters through sewers or drains, or water or sewage that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area;

   except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Back-Up of Sewer or Drain**.

   (8)  water or sewage below the surface of the ground, including water or sewage that exerts pressure on, or seeps or leaks through a *building structure*, sidewalk, driveway, swimming pool, or other structure; or

**22-EC-P053-9    000064**



(9) material carried or otherwise moved by any of the water or sewage, as described in items c.(1) through c.(8) above.

However, *we* will pay for any accidental direct physical loss by fire, explosion, or theft resulting from water, provided the resulting loss is itself a *loss insured*.

c.  **SECTION I – CONDITIONS**, **Other Insurance** is replaced by:

**Other Insurance.** This coverage is excess over other valid and collectible insurance.

All other policy provisions apply.

HO-2511

Issued by State Farm Fire and Casualty Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

## HO-2543 ENERGY EFFICIENCY UPGRADE ENDORSEMENT

This endorsement modifies insurance provided under the following: HOMEOWNERS POLICY

The following is added to **SECTION I – ADDITIONAL COVERAGES**:

**Energy Efficiency Upgrade.** If a heating unit, air conditioning unit, or water heater requires replacement due to a *loss insured* under Coverage A, *we* will pay the additional amount *you* actually spend to replace the damaged equipment with equipment that is more energy efficient. *We* will also pay the additional amounts that *you* actually and necessarily spend to make reasonable modifications to a *building structure*, ducts, vents, plumbing, electrical components, or gas or oil supply lines to accommodate the new equipment.

*We* will not pay to increase the size or capacity of the equipment and *we* will not pay more than 150% for any individual piece of equipment, including the modifications mentioned above, of what the cost would have been to replace with property of like kind and quality.

This coverage does not apply to the replacement of component parts and does not increase the Coverage A limit of insurance.

Coverage provided by this endorsement will be excess over any coverage also provided by **Option OL – Building Ordinance or Law** or the **Home Systems Protection** endorsement.

All other policy provisions apply.

HO-2543

Issued by State Farm Fire and Casualty Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

22-EC-P053-9        000065

553-2977.2

## This Notice Is Being Provided Pursuant To The Federal Fair Credit Reporting Act And Any Applicable State Law

The amount you pay for homeowners insurance is influenced by many factors, including the coverages you have, the type of construction, and the likelihood of future claims. Please refer to your declarations page for information about factors that affect your premium. State Farm® also considers information from consumer reports as a factor in determining your premium. These reports are obtained from LexisNexis Risk Solutions, Inc., a consumer reporting agency. LexisNexis only provides information, does not make any decisions about your insurance, and is unable to provide any reasons for State Farm's decision.

We encourage you to obtain a free copy of the reports used by contacting LexisNexis within 60 days of receiving this notice. Please submit your request for the consumer reports used to:

> LexisNexis Consumer Center
> P. O. Box 105108
> Atlanta, GA 30348
> Phone: 1-800-456-6004
> Internet Address: www.consumerdisclosure.com

If your credit history was adversely influenced by certain life events, such as, catastrophic illness or injury; death of an immediate family member; temporary loss of employment; divorce or identity theft, or military deployment overseas please contact your State Farm agent requesting an additional review of your information. Or, if the information in your consumer reports is incomplete or inaccurate, you have the right to dispute it with LexisNexis. If a correction is made as a result of your dispute, please tell your agent so State Farm may reconsider its decision.

Based on information in consumer reports, your premium is higher than it would have otherwise been if State Farm Fire and Casualty Company had not used consumer report information. You are receiving the most competitive rate State Farm can offer you at this time. If you would like the specific reasons for this action as related to loss history, please call or submit a written request to your State Farm agent within 90 days.

State Farm Fire and Casualty Company
Bloomington, IL

553-2977.2 (C)



This policy is one of the broadest forms available today, and provides you with outstanding value for your insurance dollars. However, we want to point out that every policy contains limitations and exclusions. Please read your policy carefully, especially "Losses Not Insured" and all exclusions.

# State Farm®
# **Homeowners Policy**

Issued by
State Farm Fire and Casualty Company
Home Office, Bloomington, IL

**Michigan**
HW-2122

# HOMEOWNERS POLICY
## TABLE OF CONTENTS

AGREEMENT ...................................................1

DEFINITIONS .................................................1

DEDUCTIBLE .................................................5

SECTION I – PROPERTY COVERAGES ...................5

  COVERAGE A – DWELLING...................................5

    Dwelling ...................................................5

    Other Structures .........................................5

    Property Not Covered....................................5

  COVERAGE B – PERSONAL PROPERTY ...............6

    Property Covered ........................................6

    Special Limits of Liability ..............................6

    Property Not Covered....................................7

  COVERAGE C – LOSS OF USE...............................8

    Additional Living Expense ..............................8

    Fair Rental Value.........................................8

    Prohibited Use ...........................................8

  SECTION I – ADDITIONAL COVERAGES...............8

    Debris Removal..........................................8

    Temporary Repairs......................................9

    Trees, Shrubs, and Landscaping .....................9

    Fire Department Service Charge......................9

    Property Removed ......................................9

    Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money.....................9

    Power Interruption .....................................10

    Refrigerated Products .................................10

    Arson Reward............................................10

    Volcanic Action .........................................10

    Collapse ..................................................10

    Locks and Remote Devices............................11

    Fuel Oil Release .........................................11

    Tear Out ..................................................11

    Home Certification......................................11

INFLATION COVERAGE .........................................12

SECTION I – LOSSES INSURED ...............................12

  COVERAGE A – DWELLING....................................12

  COVERAGE B – PERSONAL PROPERTY ...........12

SECTION I – LOSSES NOT INSURED.......................15

SECTION I – LOSS SETTLEMENT .............................18

  COVERAGE A – DWELLING....................................18

    A1 – Replacement Cost Loss Settlement – Similar Construction ....................................18

    A2 – Replacement Cost Loss Settlement – Common Construction...................................19

  COVERAGE B – PERSONAL PROPERTY ...........19

    B1 – Limited Replacement Cost Loss Settlement ...............................................19

    B2 – Depreciated Loss Settlement..................20

SECTION I – CONDITIONS.......................................20

    Insurable Interest and Limit of Liability .............20

    Your Duties After Loss .................................20

    Loss to a Pair or Set ...................................21

    Appraisal..................................................21

    Other Insurance.........................................22

    Suit Against Us ..........................................22

    Our Option ...............................................22

    Loss Payment...........................................22

    Abandonment of Property.............................22

    Mortgagee Clause .....................................22

    No Benefit to Bailee ...................................23

    Recovered Property.....................................23

    Assignment of Claim...................................23

    Michigan Public Act 495 of 1980 ...................23

SECTION II – LIABILITY COVERAGES......................23

  COVERAGE L – PERSONAL LIABILITY ...............23

  COVERAGE M – MEDICAL PAYMENTS TO OTHERS ..................................................24

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2122

**SECTION II – ADDITIONAL COVERAGES**............24

    Claim Expenses ...........................................24

    First Aid Expenses .......................................24

    Damage to Property of Others ......................24

**SECTION II – EXCLUSIONS**................................25

**SECTION II – CONDITIONS** ................................29

    Limit of Liability .............................................29

    Severability of Insurance .............................29

    Duties After Loss .........................................29

    Coverage M Requirements ...........................30

    Payment of Claim – Coverage M or Damage
    to Property of Others ...................................30

    Suit Against Us .............................................30

    Bankruptcy of an Insured .............................30

    Other Insurance – Coverage L ......................30

**SECTION I AND SECTION II – CONDITIONS**............30

    Policy Period ................................................30

    Concealment or Fraud..................................30

    Liberalization Clause ....................................30

    Waiver or Change of Policy Provisions ...........30

    Cancellation.................................................31

    Nonrenewal .................................................31

    Assignment of Policy ....................................31

    Subrogation and Reimbursement....................31

    Death...........................................................32

    Conformity to State Law ................................32

    Premium ......................................................32

    Right to Inspect............................................32

    Joint and Individual Interests .........................33

    Change of Policy Address .............................33

    Electronic Delivery........................................33

    Our Rights Regarding Claim Information..........33

    Duties Regarding Claim Information................33

**OPTIONAL POLICY PROVISIONS**...............................34

    Option AI – Additional Insured........................34

    Option BP – Business Property.......................34

    Option BU – Business Pursuits .......................34

    Option FA – Firearms ....................................34

    Option ID – Increased Dwelling Limit ..............35

    Option IO – Incidental Business .....................35

    Option JF – Jewelry and Furs.........................36

    Option OL – Building Ordinance or Law...........36

    Option SG – Silverware and Goldware
    Theft ...........................................................38

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

## HOMEOWNERS POLICY
## AGREEMENT

**We** agree to provide the insurance described in this policy:

1. based on **your** payment of premium, in a form acceptable to **us**, for the coverages **you** chose;

2. based on **your** compliance with all applicable provisions of this policy; and

3. based on the information **you** have given **us** and **your** statements in this agreement.

**You** agree, by acceptance of this policy, that:

1. **you** will pay premiums when due and comply with the provisions of this policy;

2. the statements in this agreement are **your** statements and are true;

3. **we** insure **you** on the basis **your** statements are true; and

4. this policy contains all of the agreements between **you** and **us** and any of **our** agents.

Unless otherwise indicated in the application, **you** state that:

1. there is no illegal or demonstrably hazardous use of the **dwelling**; and

2. in the immediately preceding five year period, **you** have not been:

   a. convicted of arson or conspiracy to commit arson; or

   b. successfully denied payment by an insurer of a claim under a home insurance policy based on evidence of arson, conspiracy to commit arson, fraud, or conspiracy to commit fraud, committed by **you** or on **your** behalf.

When **you** request changes to this policy, or the information or factors used to calculate the premium for this policy changes during the policy period, **we** may adjust the premium in accordance with the change during the policy period and **you** must pay any additional premium due within the time **we** specify.

## DEFINITIONS

**We** define the following words and phrases for use throughout this policy. These definitions apply to the singular, plural, and possessive forms of these words and phrases. Defined words and phrases are printed in bold italics.

1. **"actual cash value"** means the value of the damaged part of the property at the time of loss, calculated as the estimated cost to repair or replace such property, less a deduction to account for pre-loss depreciation. For this calculation, all components of this estimated cost including, but not limited to:

   a. materials, including any tax;

   b. labor, including any tax; and

   c. overhead and profit;

   are subject to depreciation.

   The depreciation deduction may include such considerations as:

   a. age;

   b. condition;

   c. reduction in useful life;

   d. obsolescence; and

   e. any pre-loss damage including wear, tear, or deterioration;

   of the damaged part of the property.

2. **"bodily injury"** means physical injury, sickness, or disease to a person. This includes required care, loss of services, and death resulting therefrom.

   **Bodily injury** does not include:

   a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any **insured** to any other person;

   b. the actual or alleged exposure to any such disease, bacteria, parasite, virus, or other organism by any **insured** to any other person; or

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

c.   emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

3.   *"building structure"* means a structure fully enclosed with permanent walls and a roof. A permanent wall or roof does not include any kind of temporary materials including but not limited to tarps, plastic sheeting, or other similar material. A structure that is otherwise fully enclosed with permanent walls and a roof, that is undergoing repairs due to a recent *loss insured*, using materials such as tarps, plastic sheeting, or other similar material, is still considered a *building structure*.

A *building structure* includes:

a.   the foundation supporting the structure, including:

(1)   slabs;

(2)   basement walls;

(3)   crawl space walls;

(4)   footings; and

(5)   gravel, stone, or sand, used as fill material and located not more than 12 inches directly below a slab described in item a.(1), including water supply lines, domestic water pipes, and sewer pipes located within this fill material; and

b.   wall-to-wall carpeting attached to the structure.

4.   *"business"* means any full-time or part-time activity, trade, profession, employment, or occupation or a commercial, mercantile, or industrial undertaking of an economic nature. It does not matter whether it is continuous or regular, is a secondary or supplemental source of income, or is an *insured's* principal means of livelihood. Profit and profit motive are irrelevant.

*Business* does not include:

a.   volunteer activities for a not-for-profit or non-profit organization or public agency for which no money is received other than payment of expenses;

b.   incidental and infrequent personal economic activity such as a hobby, garage or yard sale, or

traditional farm activities when the farm products are intended only for the personal use of the *insured*;

c.   any occasional or part-time self-employed activity by a person under 19 years of age that involves no employees or subcontracted independent contractors and is a type of activity normally performed by persons under 19 years of age, including but not limited to, child care, lawn mowing, or paper delivery;

d.   the ownership, maintenance, or use of systems and equipment used to generate electrical power up to but not exceeding 125 percent of the actual electrical power usage by the *residence premises* in the 12-month period prior to the date of the loss; or

e.   ownership of the *residence premises* by the person or organization shown in the *Declarations* as Additional Insured.

5.   *"Declarations"* means the policy *Declarations*, any amended *Declarations*, the most recent renewal *Declarations*, an Evidence of Insurance form, or any endorsement changing any of these.

6.   *"diminution in value"* means any reduction in the value of any covered property prior to or following repair or replacement as compared to the value of that property immediately before the loss.

7.   *"dwelling"* means the *building structure* on the *residence premises* used as the primary private residence and includes structures attached to the *dwelling*.

8.   *"fungus"* means any type or form of *fungus*, including mold, mildew, mycotoxins, spores, scents, or byproducts produced or released by fungi.

9.   *"insured"* means:

a.   *you*;

b.   *your relatives*; and

c.   any other person under the age of 21 in the care of a person described above.

Under Section II, *insured* also means:

d.   the person or organization legally responsible for animals or watercraft to which this policy applies. However, the animal or watercraft must be

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

owned by *you* or a person included in 9.b. or 9.c. above. A person or organization using or having custody of these animals or watercraft in the course of a *business*, or without permission of the owner, is not an *insured*; and

e. with respect to any vehicle to which this policy applies, any person while engaged in *your* employment or the employment of a person included in 9.b. or 9.c. above.

10. *"insured location"* means:

a. the *residence premises*;

b. the part of any other premises, other structures, and grounds used by *you* as a residence. This includes premises, structures, and grounds *you* acquire while this policy is in effect for *your* use as a residence;

c. any premises used by *you* in connection with the premises included in 10.a. or 10.b. above;

d. any part of a premises not owned by an *insured* but where an *insured* is temporarily residing;

e. land owned by or rented to an *insured* on which a one or two family dwelling is being constructed as a residence for an *insured*;

f. individual or family cemetery plots or burial vaults owned by an *insured*;

g. any part of a premises occasionally rented to an *insured* for purposes other than *business*;

h. vacant land owned by or rented to an *insured*. For the purposes of this definition, vacant land does not include:

(1) farm land;

(2) land containing a residence; or

(3) land containing fences, corrals, boat docks, tool sheds, barns, grain bins, and similar structures, unless they are used solely for the personal use of the *insured*; or

i. farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

11. *"loss insured"* means a loss as described under **SECTION I – LOSSES INSURED**, **COVERAGE A –**

**DWELLING** and **SECTION I – LOSSES INSURED**, **COVERAGE B – PERSONAL PROPERTY**.

12. *"motor vehicle"*, when used in Section II of this policy, means:

a. a land *motor vehicle* designed for travel on public roads or subject to motor vehicle registration;

b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration;

c. a "recreational or utility vehicle" while off an *insured location*. "Recreational or utility vehicle" means a motorized vehicle designed for recreation or utility purposes, used principally off public roads, and that is owned or leased by an *insured*. This includes, but is not limited to, a motorized all-terrain vehicle, side-by-side vehicle, utility work vehicle, amphibious vehicle, dune buggy, go-cart, golf cart, snowmobile, trailbike, minibike, and personal assistive mobility device. "Leased" does not include temporary rental;

d. a "locomotive" while off an *insured location*. "Locomotive" means a self-propelled vehicle for pulling or pushing freight or passenger cars on tracks that is large enough to carry a person and is owned or leased by an *insured*. "Leased" does not include temporary rental;

e. a bulldozer, track loader, backhoe, high-hoe, trencher, grader, crane, self-propelled scraper, excavator, pipe-layer, cherry picker, telehandler, logging vehicle, mining vehicle, or road building vehicle that is owned or leased by an *insured* while off an *insured location*. "Leased" does not include temporary rental; and

f. any vehicle while being towed or pushed by or carried on a vehicle included in 12.a. through 12.e. above.

The following are not *motor vehicles*:

a. a boat, camper, home, or utility trailer not being towed or pushed by or carried on a vehicle included in 12.a. through 12.e. above;

b. a motorized land vehicle in storage on an *insured location* not intended to be operated for

3

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2122

an extended period of time and rendered inoperable by placing the vehicle on blocks or removing parts essential for its operation;

c.   a motorized golf cart while used for golfing purposes;

d.   a motorized vehicle or trailer designed to assist persons with disabilities that is not designed for travel on public roads or subject to motor vehicle registration; or

e.   a commercially manufactured two, three, or four wheeled personal conveyance powered only by or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour.

13.   *"occurrence"*, when used in Section II of this policy, means an accident, including accidental exposure to conditions, which first results in:

a.   *bodily injury*; or

b.   *property damage*;

during the policy period. All *bodily injury* and *property damage* resulting from one accident, series of related accidents, or from continuous and repeated exposure to the same general conditions is considered to be one *occurrence*.

14.   *"property damage"* means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any *insured* is not *property damage*.

15.   *"relative"* means any person related to *you* by:

a.   blood;

b.   adoption;

c.   marriage; or

d.   civil union, domestic partnership, or other substantially similar legal relationship that is recognized and valid in the state where, and at the time when, the legal relationship was established;

and who resides primarily with *you*.

16.   *"residence employee"* means an employee of an *insured*, or an employee leased to an *insured* by a labor leasing firm under an agreement between an *insured* and the labor leasing firm, who performs duties, including household or domestic services, in connection with the maintenance or use of the *residence premises*. This includes employees who perform similar duties elsewhere for *you*. This does not include employees while performing duties in connection with the *business* of an *insured*.

17.   *"residence premises"* means:

a.   the one, two, three, or four family dwelling, other structures and grounds; or

b.   that part of any other *building structure*;

where *you* reside and which is shown in the *Declarations*.

18.   *"State Farm Companies"* means one or more of the following:

a.   State Farm Mutual Automobile Insurance Company;

b.   State Farm Fire and Casualty Company; and

c.   subsidiaries or affiliates of either 18.a. or 18.b. above.

19.   *"vacant dwelling"* means:

a.   a dwelling:

(1)   that has not been occupied as a residence for more than 60 consecutive days immediately before the loss; and

(2)   where a predominant amount of personal property has been removed or is absent such that the dwelling is not functional as a habitual place of residence.

A dwelling will be considered occupied only if it is being used as a habitual place of residence with *your* knowledge and approval.

b.   A dwelling that is under active construction will not be considered a *vacant dwelling*.  A dwelling is under active construction when it is:

(1)   being built as a new structure;

(2)   being repaired due to damage otherwise covered by this policy; or

(3)   undergoing substantial improvements, renovations, remodeling, or modifications;

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

and the construction results in substantial continuing activities by persons associated with the construction project at the premises during the relevant time periods.

20. *"we"*, *"us"*, and *"our"* mean the Company shown in the *Declarations*.

21. *"you"* and *"your"* mean the person or persons shown as "Named Insured" in the *Declarations*. If a "Named Insured" shown in the *Declarations* is a human being, then *you* and *your* include:

a. a spouse of a "Named Insured";

b. a party to a civil union with a "Named Insured";

c. a domestic partner of a "Named Insured"; or

d. a person in a substantially similar legal relationship with a "Named Insured";

if such relationship is recognized and valid in the state where, and at the time when, the legal relationship was established, so long as the person in the above relationship resides:

a. primarily with that "Named Insured"; or

b. in a different household from that "Named Insured" but shares economic and non-economic burdens with that "Named Insured".

## DEDUCTIBLE

In case of loss under this policy, *we* will pay, subject to specified policy limits, only that part of the amount of the loss that exceeds the deductible amount shown in the *Declarations*. Deductibles will be applied per occurrence. Deductibles apply to specific losses as described in this policy.

## SECTION I – PROPERTY COVERAGES

### COVERAGE A – DWELLING

1. **Dwelling.** *We* cover the *dwelling* and materials and supplies located on or adjacent to the *residence premises* for use in the construction, alteration, or repair of the *dwelling* or other structures on the *residence premises*.

2. **Other Structures.** *We* cover other structures on the *residence premises*, separated from the *dwelling* by clear space. Structures connected to the *dwelling* by only a fence, utility line, or similar connection are considered to be other structures.

*We* do not cover other structures:

a. not permanently attached to or otherwise forming a part of the realty;

b. used either completely or in part for *business* purposes unless such use consists solely of office space for paperwork, computer work, or use of a telephone, and consists solely of activities that are:

(1) duties of the *insured's* employment by another; and

(2) performed solely by the *insured*; or

c. rented or held for rental unless:

(1) rented to a person who is a tenant of the *dwelling*;

(2) rented for use solely as a private garage; or

(3) rented either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss.

3. **Property Not Covered.** *We* do not cover:

a. land, including the land necessary to support any Coverage A property. *We* also do not cover:

(1) any costs required to replace, rebuild, stabilize, or otherwise restore the land; or

(2) the costs of repair techniques designed to compensate for or prevent land instability to any property, whether or not insured under Coverage A;

b. trees, shrubs, live or artificial plants, lawns, or artificial grass, except as provided in **SECTION I – ADDITIONAL COVERAGES**, **Trees, Shrubs, and Landscaping**; or

c. systems and equipment used to generate electrical power exceeding 125 percent of the actual

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

electrical power usage by the *residence premises* in the 12-month period prior to the date of the loss.

## COVERAGE B – PERSONAL PROPERTY

1. **Property Covered.**

   a. *We* cover personal property owned or used by an *insured* while it is anywhere in the world. This includes structures not permanently attached to or otherwise forming a part of the realty. At *your* request, *we* will cover personal property:

      (1) owned by others while the property is on the part of the *residence premises* occupied exclusively by an *insured*;

      (2) owned by a guest or a *residence employee*, while the property is in any other residence occupied by an *insured*; and

      (3) owned by roomers, boarders, tenants, and other residents, any of whom are related to *you*.

   b. *We* cover personal property usually located at an *insured's* residence, other than the *residence premises*, for up to $1,000 or 10% of the Coverage B limit, whichever is greater.  This limitation does not apply to personal property:

      (1) in a newly acquired principal residence for the first 30 days after *you* start moving the property there.  If the *residence premises* is a newly acquired principal residence, personal property in *your* immediate past principal residence is not subject to this limitation for the first 30 days after the inception of this policy; and

      (2) of a student who is an *insured* while located at a residence away from the *residence premises*.

   **Special Limits of Liability.**  These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

   a. $200 on money, coins, and medals, including any of these that are a part of a collection, bank notes, bullion, gold other than goldware, silver other than silverware, and platinum;

   b. $1,500 on property used or intended for use in a *business*, including merchandise held as samples or for sale or for delivery after sale, while on the *residence premises*. This coverage is limited to $750 on such property away from the *residence premises*.

      Electronic data processing system equipment or the recording or storage media used with that equipment is not included under this coverage, and is addressed in item c. below;

   c. $10,000 on electronic data processing system equipment used or intended for use in a *business*, including but not limited to computers, tablets, mobile personal communication equipment, global positioning systems, mobile personal electronic devices used for the reproduction of sound, and standard media or non-media equipment for use with the above devices;

   d. $1,500 on securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, and tickets;

   e. $1,500 on watercraft of all types and outboard motors, including their trailers, furnishings, and equipment;

   f. $1,500 on trailers not used with watercraft;

   g. $2,500 on stamps, trading cards, and comic books, including any of these that are a part of a collection;

   h. $2,500 for loss by theft of firearms;

   i. $2,500 for loss by theft of silverware and goldware;

   j. $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging, or other similar article;

   k. $1,000 on commercially manufactured two, three, or four wheeled personal conveyances powered only by or assisted by an unmodified motor or engine with a manufacturer's power

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour. This does not include such conveyances that are:

   (1)  designed for assisting persons with disabilities;

   (2)  not designed for travel on public roads; and

   (3)  not subject to motor vehicle registration; and

l.  $1,000 for loss by theft of jewelry, watches, fur garments and garments trimmed with fur, and precious and semi-precious stones.

2.  **Property Not Covered.** *We* do not cover:

a.  articles separately described and specifically insured in this or any other insurance;

b.  animals, birds, or fish;

c.  any engine-propelled or motor-propelled vehicle or machine, including parts, designed for movement on land, except as provided in **Special Limits of Liability**, item k. However, *we* do cover those vehicles or machines:

   (1)  that are:

      (a)  not designed for travel on public roads; and

      (b)  not subject to motor vehicle registration;

   (2)  and that are:

      (a)  used primarily to service the *insured location*; or

      (b)  designed for assisting persons with disabilities;

d.  any electronic equipment, devices, or accessories designed for the recording, reproduction, or storage of audio, video, photos, or other data that is permanently installed in or permanently fastened to an engine-propelled or motor-propelled vehicle or hard-wired directly to the vehicle's electrical system. *We* also do not cover removable products that may be used with the equipment or devices described above, including but not limited to tapes, discs, videos, or memory cards while in an engine-propelled or motor-propelled vehicle;

e.  aircraft and parts. This does not apply to unmanned aircraft systems used as model aircraft and operated solely for recreational or hobby purposes;

f.  property of roomers, boarders, tenants, and other residents not related to *you*;

g.  property regularly rented or held for rental to others by an *insured*. This does not apply to property of an *insured*:

   (1)  in a sleeping room when the *dwelling* is rented in part, for use as a permanent residence, by either one or two full-time roomers or boarders; or

   (2)  on the *residence premises* if it is rented, either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss;

h.  property rented or held for rental to others away from the *residence premises*;

i.  any radio devices or transmitters, global positioning systems, radar or laser detectors, antennas, and all other similar equipment that is permanently installed in or permanently fastened to an engine-propelled or motor-propelled vehicle or that is hard-wired directly to the vehicle's electrical system;

j.  books or records of accounts receivable, abstracts or other journals, architectural or technical drawings, card index systems, or other records. This does not apply to any recording or storage media for electronic data processing. *We* will cover the cost of blank books, cards, or other blank material plus the cost of labor *you* incur for transcribing or copying such records;

k.  recording or storage media for electronic data processing that cannot be replaced with property of like kind and quality on the current retail market;

l.  purchased or created audio, video, photos, or other data that cannot be replaced with like kind and quality on the current retail market and that is transferred or downloaded onto mobile communication equipment, global positioning

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

systems, or electronic devices designed for the recording, reproduction, or storage of audio, video, photos, or other data;

m. contraband, or any property used in the course of illegal consumption, possession, import, export, or trade;

n. outdoor hardscape property used for aesthetic purposes except as provided in **SECTION I – ADDITIONAL COVERAGES**, **Trees, Shrubs, and Landscaping**; or

o. electronic currency, digital currency, virtual currency, crypto-currency, and other similar mediums of exchange.

**COVERAGE C – LOSS OF USE**

The most **we** will pay for the sum of all losses combined under **Additional Living Expense**, **Fair Rental Value**, and **Prohibited Use** is the limit of liability shown in the *Declarations* for **Coverage C – Loss of Use**.

1. **Additional Living Expense.** When a *loss insured* causes the *residence premises* to become uninhabitable, **we** will pay the reasonable and necessary increase in cost incurred by an *insured* to maintain their normal standard of living for up to 24 months. *Our* payment is limited to incurred costs for the shortest of:

   a. the time required to repair or replace the premises;

   b. the time required for *your* household to settle elsewhere; or

   c. 24 months.

   This period of time is not limited by the expiration of this policy.

   **We** will not pay more than the limit of liability shown in the *Declarations* for **Coverage C – Loss of Use**. Any normal expenses that are reduced or discontinued due to a *loss insured* will be subtracted from any amount owed.

2. **Fair Rental Value.** When a *loss insured* causes that part of the *residence premises* rented to others or held for rental by *you* to become uninhabitable, **we** will pay its fair rental value. Payment will be for the shortest time required to repair or replace the part of the premises rented or held for rental, but not to exceed

12 months. This period of time is not limited by the expiration of this policy. Fair rental value will not include any expense that does not continue while that part of the *residence premises* rented or held for rental is uninhabitable.

3. **Prohibited Use.** *We* will pay Additional Living Expense and Fair Rental Value, for a continuous period not to exceed two weeks, beginning when a civil authority issues an order of evacuation or prohibits *your* use of the *residence premises*, provided that:

   a. direct physical damage occurs to any property, other than covered property located on the *residence premises*, arising from a cause of loss that would be a *loss insured* under this policy if the damage had occurred to property on the *residence premises*;

   b. the *residence premises* is within one mile of property damaged by a cause of loss identified in 3.a. above; and

   c. the action of the civil authority is taken in response to:

      (1) dangerous physical conditions resulting from the continuation of the cause of loss identified in 3.a. above;

      (2) dangerous physical conditions resulting from the damage caused by the cause of loss identified in 3.a. above; or

      (3) the need to gain free access to property damaged by the cause of loss identified in 3.a. above.

   *We* will not pay for loss or expense due to cancellation of a lease or agreement.

**SECTION I – ADDITIONAL COVERAGES**

The following Additional Coverages are subject to all the terms, provisions, exclusions, and conditions of this policy.

1. **Debris Removal.** *We* will pay the reasonable expenses *you* incur in the removal of debris of covered property damaged by a *loss insured*. This expense is included in the limit applying to the damaged property. The following coverages and limits also apply:

   a. When the amount payable for the property damage plus the debris removal exceeds the limit for

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

damaged property, an additional 5% of that limit is available for debris removal expense. This additional amount of insurance does not apply to **SECTION I – ADDITIONAL COVERAGES, Trees, Shrubs, and Landscaping**.

b. *We* will also pay up to $1,000 total for each loss to cover the reasonable expenses *you* incur in the removal of tree debris and stumps from the *residence premises*, unless otherwise excluded. This coverage applies when:

(1) the tree has caused a *loss insured* to Coverage A property; or

(2) the tree debris felled by windstorm, hail, or weight of snow or ice blocks:

(a) the driveway, on the *residence premises*, and prevents land *motor vehicle* access to or from the *dwelling*; or

(b) a ramp designed to assist persons with disabilities, on the *residence premises*, and prevents access to or from a *building structure*.

2. **Temporary Repairs.** If damage is caused by a *loss insured*, *we* will pay the reasonable and necessary cost *you* incur for temporary repairs to covered property to protect the property from further immediate damage or loss. This coverage does not increase the limit applying to the property being repaired.

3. **Trees, Shrubs, and Landscaping.** *We* will pay for accidental direct physical loss to outdoor:

a. trees, shrubs, live or artificial plants, and lawns;

b. artificial grass; and

c. hardscape property used for aesthetic purposes not permanently affixed to realty;

on the *residence premises*, caused by the following perils: **Fire or lightning**, **Explosion**, **Riot or civil commotion**, **Aircraft**, **Vehicles** (not owned or operated by a resident of the *residence premises*), **Vandalism or malicious mischief**, or **Theft**.

The limit for this coverage, including the removal of debris, will not exceed 5% of the amount shown in the *Declarations* for **COVERAGE A – DWELLING**. *We* will not pay more than $750 for any one outdoor tree, shrub, plant, or hardscape item, including debris removal expense. This coverage may increase the limit otherwise applicable. *We* will not pay for any loss to property grown for *business* purposes.

4. **Fire Department Service Charge.** *We* will pay up to $500 per occurrence for fire department charges incurred when the fire department is called to save or protect Coverage A property from fire, lightning, or explosion. No deductible applies to this coverage. This coverage may increase the limit otherwise applicable.

5. **Property Removed.** *We* will pay for any accidental direct physical loss to covered property while being removed from a premises endangered by a *loss insured*. This coverage also applies to the property for up to 30 days while removed. *We* will also pay for reasonable expenses incurred by *you* for the removal and return of the covered property. This coverage does not increase the limit applying to the property being removed.

6. **Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money.**

a. *We* will pay up to $1,000 for:

(1) the legal obligation of an *insured* to pay because of the theft or unauthorized use of credit cards and bank fund transfer cards issued to or registered in an *insured's* name. If an *insured* has not complied with all terms and conditions under which the cards are issued, *we* will not pay for use by an *insured* or anyone else;

(2) loss to an *insured* caused by forgery or alteration of any check or negotiable instrument; and

(3) loss to an *insured* through acceptance in good faith of counterfeit United States or Canadian paper currency.

No deductible applies to this coverage.

*We* will not pay more than the limit stated above for forgery or alteration committed by any one person. This limit applies when the forgery or alteration involves one or more instruments in the same loss.

b. *We* will not pay for loss arising out of *business* pursuits or dishonesty of an *insured*.

9

HW-2122

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

c. Defense:

(1) *We* may make any investigation and settle any claim or suit that *we* decide is appropriate. *Our* obligation to defend claims or suits ends when the amount *we* pay for the loss equals *our* limit of liability.

(2) If claim is made or a suit is brought against an *insured* for liability under the Credit Card or Bank Fund Transfer Card coverage, *we* will provide a defense. This defense is at *our* expense by counsel of *our* choice.

(3) *We* have the option to defend at *our* expense an *insured* or an *insured's* bank against any suit for the enforcement of payment under the Forgery coverage.

7. **Power Interruption.** *We* will pay for accidental direct physical loss caused directly or indirectly by a change of temperature that results from power interruption that takes place on the *residence premises*. The power interruption must be caused by a *loss insured* occurring on the *residence premises*. The power lines off the *residence premises* must remain energized. This coverage does not increase the limit applying to the damaged property.

8. **Refrigerated Products.** Coverage B is extended to cover the contents of deep freeze or refrigerated units on the *residence premises* for loss due to power failure or mechanical failure. If mechanical failure or power failure is known to *you*, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure does not include:

a. removal of a plug from an electrical outlet; or

b. turning off an electrical switch unless caused by a *loss insured*.

This coverage does not increase the limit applying to the damaged property.

9. **Arson Reward.** *We* will pay $1,000 for information that leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit will not be increased regardless of the number of persons providing information.

10. **Volcanic Action.** *We* will pay for accidental direct physical loss to a covered *building structure* or covered property contained in a *building structure* resulting from the eruption of a volcano when the loss is directly and immediately caused by:

a. airborne volcanic shock waves;

b. ash, dust, or particulate matter; or

c. lava flow.

*We* will also pay for the removal of that ash, dust, or particulate matter that has caused accidental direct physical loss to a covered *building structure* or covered property contained in a *building structure*.

All volcanic eruptions that occur within any 168-hour period will be considered one volcanic eruption.

This coverage does not increase the limit applying to the damaged property.

11. **Collapse.** *We* will pay for accidental direct physical loss to covered property involving the abrupt, entire collapse of a *building structure* or any part of a *building structure*.

a. Collapse means the abrupt and entire falling down, caving in, or falling into pieces of a *building structure* or any part of a *building structure*. Collapse does not include any of the following:

(1) settling, cracking, crumbling, deterioration, shrinking, bulging, expansion, sagging, bowing, leaning, or bending;

(2) substantial structural impairment;

(3) imminent or threatened collapse;

(4) a *building structure* or any part of a *building structure* that is in danger of falling down or caving in; or

(5) a part of a *building structure* that is standing even if:

(a) it has separated from another part of the *building structure*; or

(b) it shows evidence of settling, cracking, crumbling, deterioration, shrinking, bulging, expansion, sagging, bowing, leaning, or bending.

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

b.  The collapse must be directly and immediately caused by one or more of the following:

(1)  perils described in **SECTION I – LOSSES INSURED**, **COVERAGE B – PERSONAL PROPERTY**.  These perils apply to *building structures* covered under Coverage A or Coverage B for loss insured by this Additional Coverage;

(2)  decay or deterioration of, or damage from animals, birds, or insects to:

(a)  a connector; or

(b)  a structural member of a *building structure*;

The decay, deterioration, or damage must be hidden from view and unknown to all *insureds* prior to the collapse;

(3)  weight of contents, equipment, animals, or people;

(4)  weight of ice, snow, sleet, or rain that collects on a roof, porch, or deck; or

(5)  use of defective material or methods in the construction (includes remodeling or renovation) of the *building structure*, if the collapse occurs during the course of the construction of the *building structure*.

Loss to awnings, fences, patios, pavement, swimming pools, underground pipes, flues, drains, cesspools, septic tanks, foundations (including slabs, basement walls, and crawl space walls), retaining walls, bulkheads, piers, wharfs, docks, trellises, or antennas and their supporting structures is not included under items (2), (3), and (4) immediately above unless the loss is the direct and immediate result of the collapse of a *building structure* or any part of a *building structure*.

This coverage does not increase the limit applying to the damaged property.

12.  **Locks and Remote Devices.**  *We* will pay up to $1,000 for each loss for the reasonable expenses *you* incur to rekey, replace, recode, program, or reprogram locks on exterior doors to the *dwelling* or other structures located on the *residence premises* when the keys or remote devices used with those doors are part of a covered theft loss.  This coverage includes remote devices designed solely for locking, unlocking, opening, or closing doors, including garage doors and gates.

No deductible applies to this coverage.

13.  **Fuel Oil Release.**  *We* will pay up to $10,000 for each loss for accidental direct physical loss to covered property caused by the abrupt and accidental escape of liquid fuel oil from a fixed household tank, apparatus, or pipes that are part of a heating unit for the *dwelling*.  This includes damage to covered property resulting from an accidental spill or overflow of fuel oil in the course of filling a fixed household tank.

This coverage includes surface clean up only.  *We* will not pay for:

a.  the cost to repair or replace the fuel oil tank, apparatus, and pipes; or

b.  the cost of testing, monitoring, removing, treating, or detoxifying of soil, air, or water.

This coverage does not increase the limit applying to the damaged property.

14.  **Tear Out.**  If a *loss insured* to Coverage A property is caused by water, steam, or sewage escaping from a system or appliance, *we* will also pay the reasonable cost *you* incur to tear out and replace only that particular part of the *building structure* necessary to gain access to the specific point of that system or appliance from which the water, steam, or sewage escaped.  *We* will not pay for the cost of repairing or replacing the system or appliance itself.  This coverage does not increase the limit applying to Coverage A property.

15.  **Home Certification.**  If damage to covered property is caused by a *loss insured*, *we* will pay the reasonable increase in cost to repair or replace only the damaged property to maintain the *dwelling's* FORTIFIED HOME or FORTIFIED FOR SAFER LIVING certification in place at the time of the loss.  This coverage does not increase the limit applying to the damaged property.

*We* will not pay:

a.  any increase in cost until the repair or replacement of the property is complete; or

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

b. for increased costs resulting from enforcement of any ordinance or law regulating the construction or repair of the **dwelling** except as provided under **OPTIONAL POLICY PROVISIONS**, **Option OL – Building Ordinance or Law**.

This coverage does not apply if Loss Settlement provision A2 – Replacement Cost Loss Settlement – Common Construction is shown in the **Declarations**.

**INFLATION COVERAGE**

The limits of liability shown in the **Declarations** for Coverage A, Coverage B, and when applicable, Option ID will be increased at the same rate as the increase in the Inflation Coverage Index shown in the **Declarations**.

To find the limits on a given date:

1. divide the Index on that date by the Index as of the effective date of this Inflation Coverage provision; then

2. multiply the resulting factor by the limits of liability for Coverage A, Coverage B, and Option ID separately.

The limits of liability will not be reduced to less than the amounts shown in the **Declarations**.

If during the term of this policy the Coverage A limit of liability is changed at **your** request, the effective date of this Inflation Coverage provision is changed to coincide with the effective date of such change.

## SECTION I – LOSSES INSURED

**COVERAGE A – DWELLING**

**We** will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy. However, loss does not include and **we** will not pay for, any **diminution in value**.

**COVERAGE B – PERSONAL PROPERTY**

**We** will pay for accidental direct physical loss to the property described in Coverage B caused by the following perils, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy. However, loss does not include and **we** will not pay for, any **diminution in value**.

1. **Fire or lightning.**

2. **Windstorm or hail.** This peril does not include loss to property contained in a structure caused by rain, snow, sleet, sand, or dust. This limitation does not apply when the direct force of wind or hail damages the structure causing an opening in a roof or wall and the rain, snow, sleet, sand, or dust enters through this opening.

This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard motors, only while inside a **building structure**.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft**, including self-propelled missiles and spacecraft.

6. **Vehicles**, meaning accidental direct physical loss to covered property caused by the weight, force, power, or movement of a vehicle.

a. This includes:

(1) the impact of a vehicle;

(2) an object propelled from the tire or body of a vehicle;

(3) the upset or collision of a vehicle with a stationary object or other vehicle, including damage to personal property carried on the exterior of the vehicle; or

(4) a vehicle door or trunk lid being closed on personal property.

b. This peril does not include loss:

(1) to personal property that falls off a vehicle and strikes the ground, any other surface, or any object;

(2) caused by shifting of the load being carried in or on a vehicle; or

(3) to the vehicle itself unless the vehicle is property covered under **COVERAGE B – PERSONAL PROPERTY** and the loss is caused by the weight, force, power, or movement of another vehicle.

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

7. **Smoke**, meaning abrupt and accidental damage from smoke.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief**, meaning only willful and malicious damage to or destruction of property.

9. **Theft**, including attempted theft and loss of property from a known location when it is probable that the property has been stolen.

This peril does not include:

a. loss of a precious or semi-precious stone from its setting;

b. loss caused by theft:

(1) committed by an *insured* or by any other person regularly residing on the *insured location*. Property of a student who is an *insured* is covered while located at a residence away from the *residence premises*, if the theft is committed by a person who is not an *insured*;

(2) in or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

(3) from the part of a *residence premises* rented to others:

(a) caused by a tenant, members of the tenant's household, or the tenant's employees unless the *residence premises* is rented, either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss;

(b) of money, bank notes, bullion, gold, goldware, silver, silverware, pewterware, platinum, coins, and medals;

(c) of securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards, and other negotiable instruments, accounts,

deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets, and stamps; or

(d) of jewelry, watches, fur garments and garments trimmed with fur, and precious and semi-precious stones; or

c. loss caused by theft that occurs away from the *residence premises* of:

(1) property while at any other residence owned, rented to, or occupied by an *insured*, except while an *insured* is temporarily residing there. Property of a student who is an *insured* is covered while at a residence away from the *residence premises*;

(2) watercraft of all types, including their furnishings, equipment, and outboard motors; or

(3) trailers and campers designed to be pulled by or carried on a vehicle.

If the *residence premises* is a newly acquired principal residence, property in the immediate past principal residence will not be considered property away from the *residence premises* for the first 30 days after the inception of this policy.

10. **Falling objects.** This peril does not include loss to property contained in a structure unless the roof or an exterior wall of the structure is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow, or sleet** that causes damage to property contained in a structure.

12. **Abrupt and accidental discharge or overflow** of water, steam, or sewage from within a plumbing, heating, air conditioning, or automatic fire protective sprinkler system, or from within a household appliance.

This peril does not include loss:

a. to the system or appliance from which the water, steam, or sewage escaped;

b. caused by or resulting from:

(1) freezing;

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

(2) water or sewage from outside the *residence premises* plumbing system that enters through sewers or drains, or water that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area; or

(3) the pressure from or presence of tree, shrub, or plant roots; or

c. that occurs or develops over a period of time and is caused by or resulting from:

(1) condensation or the presence of humidity, moisture, or vapor; or

(2) seepage or leakage of water, steam, or sewage that is:

(a) continuous;

(b) repeating;

(c) gradual;

(d) intermittent;

(e) slow; or

(f) trickling.

13. **Abrupt and accidental tearing asunder, cracking, burning, or bulging** of a steam or hot water heating system, an air conditioning system, an automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss:

a. caused by or resulting from freezing; or

b. that occurs or develops over a period of time and is caused by or resulting from:

(1) condensation or the presence of humidity, moisture, or vapor; or

(2) seepage or leakage of water or steam that is:

(a) continuous;

(b) repeating;

(c) gradual;

(d) intermittent;

(e) slow; or

(f) trickling.

14. **Freezing** of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system, or of a household appliance.

This peril does not include:

a. loss to a portable hot tub or portable spa unless *you* have used reasonable care to prevent freezing; or

b. loss on the *residence premises* unless *you* have used reasonable care to:

(1) maintain heat in the *building structure* at 55 degrees Fahrenheit or higher; or

(2) shut off the water supply and drain the system and appliances of water.

However, if the *building structure* is protected by an automatic fire protective sprinkler system, *you* must use reasonable care to continue the water supply and maintain heat in the *building structure* at 55 degrees Fahrenheit or higher for coverage to apply.

15. **Abrupt and accidental damage** to electrical appliances, devices, fixtures, and wiring from an increase or decrease of artificially generated electrical current. *We* will pay up to $3,000 under this peril for each damaged item described above.

16. **Breakage of glass**, meaning damage to personal property caused by breakage of glass that is a part of a structure on the *residence premises*. *We* will not pay for loss or damage to the glass.

17. **Wild bears or deer**, meaning damage caused by wild bears or deer to property located in a *building structure*.

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

# SECTION I – LOSSES NOT INSURED

1.  *We* will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

    a.  collapse, except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Collapse**;

    b.  freezing of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system or of a household appliance; or discharge, leakage, or overflow from within the system or appliance caused by freezing. This does not apply if *you* have used reasonable care to:

        (1)  maintain heat in the *building structure* at 55 degrees Fahrenheit or higher; or

        (2)  shut off the water supply and drain the system and appliances of water.

        However, if the *building structure* is protected by an automatic fire protective sprinkler system, *you* must use reasonable care to continue the water supply and maintain heat in the *building structure* at 55 degrees Fahrenheit or higher for coverage to apply;

    c.  freezing, thawing, pressure, or weight of water, ice, snow, or sleet, whether driven by wind or not, to:

        (1)  a swimming pool, hot tub, or spa, including their covers, filtration, and circulation systems; or

        (2)  an awning, fence, pavement, patio, foundation (including slabs, basement walls, crawl space walls, and footings), retaining wall, bulkhead, pier, wharf, or dock;

    d.  theft in or to a dwelling under construction, or of materials and supplies for use in the construction, until the dwelling is completed and occupied;

    e.  theft, vandalism, malicious mischief, or breakage of glass and safety glazing materials if the dwelling is a *vacant dwelling*;

    f.  seepage or leakage of water, steam, or sewage that occurs or develops over a period of time:

        (1)  and is:

            (a)  continuous;

            (b)  repeating;

            (c)  gradual;

            (d)  intermittent;

            (e)  slow; or

            (f)  trickling; and

        (2)  from a:

            (a)  heating, air conditioning, or automatic fire protective sprinkler system;

            (b)  household appliance; or

            (c)  plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings, or floors.

        *We* also will not pay for losses arising from condensation or the presence of humidity, moisture, or vapor that occurs or develops over a period of time;

    g.  wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown;

    h.  corrosion, electrolysis, or rust;

    i.  wet or dry rot;

    j.  contamination or pollution, meaning the presence, discharge, dispersal, seepage, migration, release, or escape of contaminants or pollutants at or from any source.  This does not apply if the presence, discharge, dispersal, seepage, migration, release, or escape is itself caused by a peril described in **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY**.

        (1)  Contaminants and pollutants include but are not limited to any:

15

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2122

(a) solid, liquid, gaseous, or thermal irritant, including smoke from agricultural smudging or industrial operations, smog, soot, vapor, fumes, acids, alkalis, chemicals, pathogens, noxious substances, asbestos, or lead;

(b) contaminants or pollutants resulting from any natural resource extraction activities; or

(c) fuel oil except as specifically provided in **SECTION I – ADDITIONAL COVERAGES**, **Fuel Oil Release**.

(2) *We* also will not pay for:

(a) losses arising from contamination or pollution caused by or resulting from defective building materials, nuclear substances, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed;

(b) the cost to extract contaminants or pollutants from land, water, or air, or the cost to remove, restore, or replace contaminated or polluted land, water, or air; or

(c) the cost of testing, monitoring, cleaning, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or assessing the effects of contaminants or pollutants;

k. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations (including slabs, basement walls, crawl space walls, and footings), walls, floors, roofs, or ceilings;

l. all animals, birds, or insects.

(1) This includes:

(a) nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects;

(b) costs to remove animals, birds, or insects from the covered property; and

(c) costs to prevent the animals, birds, or insects from returning to the property;

(2) However, *we* will pay for:

(a) losses caused by wild bears or deer; and

(b) the breakage of glass or safety glazing material that is a part of a *building structure*, when caused by animals, birds, or insects; or

m. pressure from or presence of tree, shrub, or plant roots.

However, *we* will pay for any resulting loss from items a. through l. unless the resulting loss is itself a Loss Not Insured as described in this Section.

2. *We* will not pay for, under any part of this policy, any loss that would not have occurred in the absence of one or more of the following excluded events. *We* will not pay for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs abruptly or gradually, involves isolated or widespread damage, occurs on or off the *residence premises*, arises from natural or external forces, or occurs as a result of any combination of these:

a. **Ordinance or Law**, meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a *building structure* or other structure.

b. **Earth Movement**, meaning the sinking, rising, shifting, expanding, or contracting of earth, all regardless of whether combined with water, sewage, or any material carried by, or otherwise moved by the earth. Earth movement includes but is not limited to:

(1) earthquake;

(2) landslide, mudslide, or mudflow;

(3) sinkhole or subsidence;

(4) movement resulting from:

(a) improper compaction;

(b) site selection;

(c) natural resource extraction activities; or

(d) excavation;

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

(5) erosion;

(6) pressure by surface or subsurface earth or fill; or

(7) any volcanic activity, except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Volcanic Action**.

However, *we* will pay for any accidental direct physical loss by fire resulting from earth movement, provided the resulting fire loss is itself a *loss insured*.

c. **Water**, meaning:

(1) flood;

(2) surface water. This does not include water solely caused by the release of water from a swimming pool, spigot, sprinkler system, hose, or hydrant;

(3) waves (including tidal wave, tsunami, and seiche);

(4) tides or tidal water;

(5) overflow of any body of water (including any release, escape, or rising of any body of water, or any water held, contained, controlled, or diverted by a dam, levee, dike, or any type of water containment, diversion, or flood control device);

(6) spray or surge from any of the items c.(1) through c.(5) described above, all whether driven by wind or not;

(7) water or sewage from outside the *residence premises* plumbing system that enters through sewers or drains, or water or sewage that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area;

(8) water or sewage below the surface of the ground, including water or sewage that exerts pressure on, or seeps or leaks through a *building structure*, sidewalk, driveway, swimming pool, or other structure; or

(9) material carried or otherwise moved by any of the water or sewage, as described in items c.(1) through c.(8) above.

However, *we* will pay for any accidental direct physical loss by fire, explosion, or theft resulting from water, provided the resulting loss is itself a *loss insured*.

d. **Neglect**, meaning neglect of the *insured* to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

e. **War**, including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon will be considered a warlike act even if accidental.

f. **Nuclear Hazard**, meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke.

However, *we* will pay for any accidental direct physical loss by fire resulting from the nuclear hazard, provided the resulting fire loss is itself a *loss insured*.

g. *Fungus*, including:

(1) any loss of use or delay in rebuilding, repairing, or replacing covered property, including any associated cost or expense, due to interference at the *residence premises* or location of the rebuilding, repair, or replacement, by *fungus*;

(2) any remediation of *fungus*, including the cost to:

(a) remove the *fungus* from covered property or to repair, restore, or replace that property; or

(b) tear out and replace any part of the *building structure* or other property

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

as needed to gain access to the *fungus*; or

(3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence, or level of *fungus*, whether performed prior to, during, or after removal, repair, restoration, or replacement of covered property.

h. **Intentional Losses.** If any *insured* intentionally causes or procures a loss to property covered under this policy, *we* will not pay any *insured* for this loss. This applies regardless of whether the *insured* is charged with or convicted of a crime.

This does not apply to an *insured* who did not participate in, cooperate in, or contribute to causing or procuring the loss.

3. *We* will not pay for, under any part of this policy, any loss consisting of one or more of the items below. Further, *we* will not pay for any loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to, or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

a. conduct, act, failure to act, or decision of any person, group, organization, or governmental body whether intentional, wrongful, negligent, or without fault;

b. defect, weakness, inadequacy, fault, or unsoundness in:

(1) planning, zoning, development, surveying, or siting;

(2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, or compaction;

(3) materials used in repair, construction, renovation, remodeling, grading, or compaction; or

(4) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the *residence premises*; or

c. weather conditions.

However, *we* will pay for any resulting loss from items 3.a., 3.b., and 3.c. unless the resulting loss is itself a Loss Not Insured as described in this Section.

## SECTION I – LOSS SETTLEMENT

Only the **Loss Settlement Provisions** shown in the *Declarations* apply. *We* will settle covered property losses according to the following. However, the valuation of any covered property losses does not include, and *we* will not pay, any amount for *diminution in value*.

**COVERAGE A – DWELLING**

1. **A1 – Replacement Cost Loss Settlement – Similar Construction.**

a. *We* will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the *Declarations*, the damaged part of the property covered under **SECTION I – PROPERTY COVERAGES, COVERAGE A – DWELLING**, except for wood fences, subject to the following:

(1) until actual repair or replacement is completed, *we* will pay only the *actual cash value* of the damaged part of the property,

up to the applicable limit of liability shown in the *Declarations*, not to exceed the cost to repair or replace the damaged part of the property;

(2) when the repair or replacement is actually completed, *we* will pay the covered additional amount *you* actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the *Declarations*, whichever is less;

(3) to receive any additional payments on a replacement cost basis, *you* must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify *us* within 30 days after the work has been completed; and

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

(4) *we* will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair, or demolition of a *building structure* or other structure, except as provided under **OPTIONAL POLICY PROVISIONS**, **Option OL – Building Ordinance or Law**.

b. Wood Fences:  **We** will pay the *actual cash value* for loss or damage to wood fences, not to exceed the limit of liability shown in the *Declarations* for **COVERAGE A – Other Structures**.

2. **A2 – Replacement Cost Loss Settlement – Common Construction.**

a. **We** will pay the cost to repair or replace with common construction and for the same use on the premises shown in the *Declarations*, the damaged part of the property covered under **SECTION I – PROPERTY COVERAGES**, **COVERAGE A – DWELLING**, except for wood fences, subject to the following:

(1) *we* will pay only for repair or replacement of the damaged part of the property with common construction techniques and materials commonly used by the building trades in standard new construction.  **We** will not pay the cost to repair or replace obsolete, antique, or custom construction with like kind and quality;

(2) until actual repair or replacement is completed, *we* will pay only the *actual cash value* of the damaged part of the property, up to the applicable limit of liability shown in the *Declarations*, not to exceed the cost to repair or replace the damaged part of the property as described in a.(1) above;

(3) when the repair or replacement is actually completed as described in a.(1) above, *we* will pay the covered additional amount *you* actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the *Declarations*, whichever is less;

(4) to receive any additional payments on a replacement cost basis, *you* must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify *us* within 30 days after the work has been completed; and

(5) *we* will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair, or demolition of a *building structure* or other structure, except as provided under **OPTIONAL POLICY PROVISIONS**, **Option OL – Building Ordinance or Law**.

b. Wood Fences: **We** will pay the *actual cash value* for loss or damage to wood fences, not to exceed the limit of liability shown in the *Declarations* for **COVERAGE A – Other Structures**.

**COVERAGE B – PERSONAL PROPERTY**

1. **B1 – Limited Replacement Cost Loss Settlement.**

a. **We** will pay the cost to repair or replace property covered under **SECTION I – PROPERTY COVERAGES**, **COVERAGE B – PERSONAL PROPERTY**, except for property listed in item b. below, subject to the following:

(1) until repair or replacement is completed, *we* will pay only the *actual cash value* of the damaged property;

(2) after repair or replacement is completed, *we* will pay the difference between the *actual cash value* and the cost *you* have actually and necessarily spent to repair or replace the property; and

(3) if property is not repaired or replaced within two years after the date of loss, *we* will pay only the *actual cash value*.

b. **We** will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary, and similar articles which by their inherent nature cannot be replaced with new articles;

(2) articles whose age or history contribute substantially to their value including, but not

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

limited to, memorabilia, souvenirs, and collectors items; and

(3) property not useful for its intended purpose.

However, *we* will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1) *our* cost to replace at the time of loss;

(2) the full cost of repair;

(3) any special limit of liability described in this policy; or

(4) any applicable Coverage B limit of liability.

2. **B2 – Depreciated Loss Settlement.**

a. *We* will pay the *actual cash value* for property covered under **SECTION I – PROPERTY COVERAGES**, **COVERAGE B – PERSONAL PROPERTY**, except for property listed in item b. below.

b. *We* will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary, and similar articles which by their inherent nature cannot be replaced with new articles;

(2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs, and collectors items; and

(3) property not useful for its intended purpose.

However, *we* will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1) *our* cost to replace at the time of loss;

(2) the full cost of repair;

(3) any special limit of liability described in this policy; or

(4) any applicable Coverage B limit of liability.

## SECTION I – CONDITIONS

1. **Insurable Interest and Limit of Liability.**  Even if more than one person has an insurable interest in the property covered, *we* will not be liable:

a. to the *insured* for an amount greater than the *insured's* interest; or

b. for more than the applicable limit of liability.

2. **Your Duties After Loss.**  After a loss to which this insurance may apply, *you* must cooperate with *us* in the investigation of the claim and also see that the following duties are performed:

a. give immediate notice to *us* or *our* agent and also notify:

(1) the police if the loss is caused by theft, vandalism, or any other criminal act; and

(2) the credit card company or bank if the loss involves a credit card or bank fund transfer card;

b. protect the property from further damage or loss and also:

(1) make reasonable and necessary temporary repairs required to protect the property; and

(2) keep an accurate record of repair expenses;

c. prepare an inventory of damaged or stolen personal property:

(1) showing in detail the quantity, description, age, replacement cost, and amount of loss; and

(2) attaching all bills, receipts, and related documents that substantiate the figures in the inventory;

d. as often as *we* reasonably require:

(1) exhibit the damaged property;

(2) provide *us* with any requested records and documents and allow *us* to make copies;

(3) while not in the presence of any other *insured*:

(a) give statements; and

(b) submit to examinations under oath; and

(4) produce employees, members of the *insured's* household, or others for examination under oath to the extent it is within the *insured's* power to do so; and

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

e.   submit to *us*, within 60 days after the loss, *your* signed, sworn proof of loss that sets forth, to the best of *your* knowledge and belief:

    (1)   the time and cause of loss;

    (2)   interest of the *insured* and all others in the property involved and all encumbrances on the property;

    (3)   other insurance that may cover the loss;

    (4)   changes in title or occupancy of the property during the term of this policy;

    (5)   specifications of any damaged structure and detailed estimates for repair of the damage;

    (6)   an inventory of damaged or stolen personal property described in 2.c.;

    (7)   receipts for additional living expenses incurred and records supporting the fair rental value loss; and

    (8)   evidence or affidavit supporting a claim under **SECTION I – ADDITIONAL COVERAGES**, **Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money** coverage, stating the amount and cause of loss.

3.   **Loss to a Pair or Set.** In case of loss to a pair or set, *we* may choose to:

    a.   repair or replace any part to restore the pair or set to its value before the loss; or

    b.   pay the difference between the depreciated value of the property before the loss and the depreciated value of the property after the loss.

4.   **Appraisal.** If *you* and *we* fail to agree on the amount of loss, either party can demand that the amount of the loss be set by appraisal.  Only *you* or *we* may demand appraisal.  A demand for appraisal must be in writing.  *You* must comply with **SECTION I – CONDITIONS**, **Your Duties After Loss** before making a demand for appraisal.  At least 10 days before demanding appraisal, the party seeking appraisal must provide the other party with written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed.

a.   Each party will select a competent, independent appraiser and notify the other party of the appraiser's identity within 20 days of receipt of the written demand for appraisal.

b.   The appraisers will then attempt to set the amount of the loss of each item in dispute as specified by each party, and jointly submit to each party a written report of agreement signed by them. In all instances the written report of agreement will be itemized and state separately the *actual cash value*, replacement cost, and if applicable, the market value of each item in dispute.

    The written report of agreement will set the amount of the loss of each item in dispute and will be binding upon *you* and *us*.

c.   If the two appraisers fail to agree upon the amount of the loss within 30 days, unless the period of time is extended by mutual agreement, they will select a competent, impartial umpire and will submit their differences to the umpire.  If the appraisers are unable to agree upon an umpire within 15 days:

    (1)   *you* or *we* may make a written application for a judge of the circuit court in the same state and county (or city if the city is not within a county) in which the loss occurred or where the *residence premises* is located to select an umpire;

    (2)   the party requesting the selection described in item c.(1) must provide the other party:

        (a)   written notice of the intent to file, identifying the specific location and identity of the court at least 10 days prior to submission of the written application; and

        (b)   a copy of the written application; and

    (3)   a written report of agreement, as required in item b., signed by any two (appraisers or appraiser and umpire) will set the amount of the loss of each item in dispute and will be binding upon *you* and *us*. In all instances the written report of agreement will be itemized and state separately the *actual*

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

*cash value*, replacement cost, and if applicable, the market value of each item in dispute.

d.  To qualify as an appraiser or umpire for a loss to property described in **COVERAGE A – DWELL-ING**, a person must be one of the following and be licensed or certified as required by the applicable jurisdiction:

(1)  an engineer or architect with experience and training in building construction, repair, estimating, or investigation of the type of property damage in dispute;

(2)  an adjuster or public adjuster with experience and training in estimating the type of property damage in dispute; or

(3)  a contractor with experience and training in the construction, repair, and estimating of the type of property damage in dispute.

e.  A person may not serve as an appraiser or umpire if that person, any employee of that person, that person's employer, or any employee of their employer:

(1)  has performed services for either party with respect to the claim at issue in the appraisal; or

(2)  has a financial interest in the outcome of the claim at issue in the appraisal.

f.  Each party will be responsible for the compensation of their selected appraiser. Reasonable expenses of the appraisal and the reasonable compensation of the umpire will be paid equally by *you* and *us*.

g.  *You* and *we* do not waive any rights by demanding or submitting to an appraisal, and retain all contractual rights to determine if coverage applies to each item in dispute.

h.  Appraisal is only available to determine the amount of the loss of each item in dispute. The appraisers and the umpire have no authority to decide:

(1)  any other questions of fact;

(2)  questions of law;

(3)  questions of coverage;

(4)  other contractual issues; or

(5)  to conduct appraisal on a class-wide basis.

i.  Appraisal is a non-judicial proceeding and does not provide for or require arbitration. Neither party will be awarded attorney fees. The appraisal award may not be entered as a judgment in a court.

j.  A party may not demand appraisal after that party brings suit or action against the other party relating to the amount of loss.

5.  **Other Insurance.** If a loss covered by this policy is also covered by other insurance, *we* will pay only *our* share of the loss. *Our* share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss.

6.  **Suit Against Us.** No action will be brought against *us* unless there has been full compliance with all of the policy provisions. Any action by any party must be started within one year after the date of loss or damage. The time for commencing an action is tolled from the time *you* notify *us* of the loss until *we* formally deny liability.

7.  **Our Option.** *We* may repair or replace any part of the property damaged or stolen with similar property. Any property *we* pay for or replace becomes *our* property.

8.  **Loss Payment.** *We* will adjust all losses with *you*. *We* will pay *you* unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 30 days after *we* receive *your* proof of loss and:

a.  reach agreement with *you*;

b.  there is an entry of a final judgment; or

c.  there is a filing of an appraisal award with *us*.

9.  **Abandonment of Property.** *We* need not accept any property abandoned by an *insured*.

10.  **Mortgagee Clause.** The word "mortgagee" includes trustee.

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

a. If a mortgagee is named in this policy, any loss payable under Coverage A will be paid to the mortgagee and *you*, as interests appear.  If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

b. If *we* deny *your* claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

   (1) notifies *us* of any change in ownership, occupancy, or substantial change in risk of which the mortgagee is aware;

   (2) pays on demand any premium due under this policy, if *you* have not paid the premium; and

   (3) submits a signed, sworn statement of loss within 60 days after receiving notice from *us* of *your* failure to do so. Policy conditions relating to **Appraisal**, **Suit Against Us**, and **Loss Payment** apply to the mortgagee.

c. If *we* cancel this policy, the mortgagee will be notified at least 10 days before the date cancellation takes effect.  Proof of mailing will be proof of notice.

d. If *we* pay the mortgagee for any loss and deny payment to *you*:

   (1) *we* are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

   (2) at *our* option, *we* may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, *we* will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

e. Subrogation does not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

11. **No Benefit to Bailee.  *We*** will not recognize an assignment or grant coverage for the benefit of a person or organization holding, storing, or transporting property for a fee. This applies regardless of any other provision of this policy.

12. **Recovered Property.**  If either *you* or *we* recover any property after loss settlement, that party must give the other prompt notice.  At *your* option, *you* may keep the property or *we* will return it to *you*.  Otherwise, it will become *our* property.  If *you* choose to keep the property, the loss payment will be adjusted based on the amount *you* received for the recovered property.

13. **Assignment of Claim.**  Assignment to another party of any of *your* rights or duties under this policy regarding any claim, or any part of any claim, will be void and *we* will not recognize any such assignment, unless *we* give *our* written consent.  However, once *you* have complied with all policy provisions, *you* may assign to another party, in writing, payment of claim proceeds otherwise payable to *you*.

14. **Michigan Public Act 495 of 1980.** If a municipality has elected to apply the provisions of Michigan Public Act 495 of 1980, a part of *our* payment for fire or explosion loss or damage to *your* covered real property in that municipality will be withheld if the loss or damage is subject to the provisions of the Act. The withheld amount will be paid either to the municipality or to *you* and the mortgage holder, if any, according to the provisions of Public Act 495. *We* will notify *you*, any mortgage holder, and the municipality of any loss subject to the provisions of Public Act 495.

This Condition also applies to the Mortgagee Clause Condition and to the Appraisal Condition.

## SECTION II – LIABILITY COVERAGES

### COVERAGE L – PERSONAL LIABILITY

If a claim is made or a suit is brought against an ***insured*** for damages because of ***bodily injury*** or ***property damage*** to which this coverage applies, caused by an ***occurrence***, *we* will:

1. pay up to *our* limit of liability for the damages for which the ***insured*** is legally liable.  *We* will not pay for criminal restitution; and

2. provide a defense at *our* expense by counsel of *our* choice.  *We* may make any investigation and settle any claim or suit that *we* decide is appropriate.  *Our*

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

obligation to defend any suit ends when the amount *we* pay for damages, to effect settlement or satisfy a judgment resulting from the *occurrence*, equals *our* limit of liability. *We* will not provide a defense to any *insured* for criminal prosecution or proceedings.

## COVERAGE M – MEDICAL PAYMENTS TO OTHERS

*We* will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing *bodily injury*. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, rehabilitation, pharmaceuticals, orthopedic devices, prosthetic devices, and funeral services. This coverage applies only:

1. to a person on the *insured location* with the permission of an *insured*;

2. to a person off the *insured location*, if the *bodily injury*:

   a. arises out of a condition on the *insured location* or the ways immediately adjoining;

   b. is caused by the activities of an *insured*;

   c. is caused by a *residence employee* in the course of the *residence employee's* employment by an *insured*; or

   d. is caused by an animal owned by or in the care of an *insured*; or

3. to a *residence employee* if the *occurrence* causing *bodily injury* occurs off the *insured location* and arises out of or in the course of the *residence employee's* employment by an *insured*.

## SECTION II – ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions, and conditions of this policy.

*We* will pay for the following in addition to the limits of liability:

1. **Claim Expenses. *We*** will pay:

   a. expenses *we* incur and costs taxed against an *insured* in suits *we* defend. Taxed costs do not include attorney fees;

   b. premiums on bonds required in suits *we* defend, but not for bond amounts greater than the Coverage L limit. *We* are not obligated to apply for or furnish any bond;

   c. reasonable expenses an *insured* incurs at *our* request. This includes actual loss of earnings (but not loss of other income) up to $250 per day for aiding *us* in the investigation or defense of claims or suits;

   d. interest the *insured* is legally liable to pay on damages payable under Coverage L above before a judgment, but only the interest on the lesser of:

      (1) that part of the damages *we* pay; or

      (2) the Coverage L limit; and

   e. interest on the entire judgment that accrues after entry of the judgment and before *we* pay or tender, or deposit in court that part of the judgment that does not exceed the limit of liability that applies.

2. **First Aid Expenses. *We*** will pay expenses for first aid to others incurred by an *insured* for *bodily injury* covered under this policy. *We* will not pay for first aid to *you* or any other *insured*.

3. **Damage to Property of Others.**

   a. *We* will pay for *property damage* to property of others caused by the activities of an *insured*.

   b. *We* will not pay more than the smallest of the following amounts:

      (1) replacement cost at the time of loss;

      (2) full cost of repair; or

      (3) the limit of liability shown in the *Declarations* for **Damage to Property of Others** for any one *occurrence*.

   c. *We* will not pay for *property damage*:

      (1) for a loss that is recoverable under Section I of this policy. *We* also will not pay for any applicable deductible regardless of whether the amount of the loss exceeds the deductible;

      (2) caused intentionally by an *insured* 13 years of age or older;

24

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2122

(3) to property, other than a rented golf cart, owned by, or rented to an *insured*, a tenant of an *insured*, or a resident in *your* household;

(4) arising out of:

(a) *business* pursuits;

(b) any act or omission in connection with a premises an *insured* owns, rents, or controls, other than the *insured location*;

(c) a condition on the *insured location* or the ways immediately adjoining; or

(d) the ownership, maintenance, or use of a *motor vehicle*, aircraft, or watercraft, including airboat, air cushion, personal watercraft, sail board, or similar type watercraft; or

(5) if a payment is made under **COVERAGE L – PERSONAL LIABILITY** for the same *property damage*.

## SECTION II – EXCLUSIONS

1. Coverage L and Coverage M do not apply to:

a. *bodily injury* or *property damage* that:

(1) was a result of a willful and malicious act or omission of the *insured*;

(2) was intended by the *insured*; or

(3) would have been expected by the *insured* based on a reasonable person standard.

However, exclusions a.(2) and a.(3) above do not apply to *bodily injury* or *property damage* resulting from the use of reasonable force to protect persons or property.

Exclusions a.(1), a.(2), and a.(3) above apply to all *bodily injury* or *property damage* even if the:

(1) *bodily injury* or *property damage* was sustained by a different person, entity, or property than was expected or intended;

(2) *bodily injury* or *property damage* was of a different kind, quality, or degree than was expected or intended;

(3) *insured* lacked the mental capacity to control his or her conduct*;*

(4) *insured* was not charged with or convicted of a criminal act or omission; or

(5) *insured* was impaired by drugs or alcohol;

b. *bodily injury* or *property damage* arising out of *business* pursuits of any *insured*, except as provided in item c. below. This exclusion does not apply to activities that are ordinarily incident to non-*business* pursuits;

c. *bodily injury* or *property damage* arising out of the rental of any part of any premises by any *insured*. This exclusion does not apply:

(1) to the rental of the *residence premises*:

(a) either completely or in part, for exclusive use as a residence, for up to 30 nights in the 12-month period prior to the date of the loss;

(b) in part, for use as a permanent residence, by either one or two full-time roomers or boarders; or

(c) in part, as an office, school, studio, or private garage;

(2) when the *dwelling* on the *residence premises* is a two, three, or four family *dwelling* and *you* occupy one part and rent the other part to others;

(3) to farm land (without buildings), rented to others, but not to exceed a total of 500 acres, regardless of the number of locations; or

(4) to activities that are ordinarily incident to non-*business* pursuits;

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

d. **bodily injury** or **property damage** arising out of the rendering or failing to render professional services;

e. **bodily injury** or **property damage** arising out of any premises currently owned or rented to any **insured** which is not an **insured location**. This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**;

f. **bodily injury** or **property damage** arising out of the ownership, maintenance, use, loading, or unloading of:

   (1) an aircraft.  This exclusion does not apply to the ownership, maintenance, use, loading, or unloading of unmanned aircraft systems used as model aircraft:

      (a) solely for recreational or hobby purposes;

      (b) designed to be operated within the visual line of sight of the operator and operated within the visual line of sight of the operator; and

      (c) weighing not more than 55 pounds at the time of operation;

   unless the ownership, maintenance, use, loading, or unloading of such aircraft results in:

      (a) **property damage** to any aircraft; or

      (b) **bodily injury** or **property damage** resulting from interference with an aircraft carrying people regardless of whether the **bodily injury** or **property damage** is sustained by people or property on the aircraft or not;

   (2) a **motor vehicle** owned or operated by or rented or loaned to any **insured**; or

   (3) a watercraft:

      (a) owned by or rented to any **insured** if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

      (b) owned by or rented to any **insured** if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length;

      (c) powered by one or more outboard motors with more than 25 total horsepower owned by any **insured**;

      (d) designated as an airboat, air cushion, or similar type of craft; or

      (e) owned by any **insured** if it is a personal watercraft using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

   This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**.  Exclusion f.(3) does not apply while the watercraft is on the **residence premises**;

g. **bodily injury** or **property damage** arising out of:

   (1) the entrustment by any **insured** to any person;

   (2) the supervision by any **insured** of any person;

   (3) any liability statutorily imposed on any **insured**; or

   (4) any liability assumed through an unwritten or written agreement by any **insured**;

   with regard to the ownership, maintenance, or use of any aircraft, watercraft, or **motor vehicle** not covered under Section II of this policy;

h. **bodily injury** or **property damage** caused directly or indirectly by war, including undeclared war, or any warlike act including destruction, seizure, or use for a military purpose, or any consequence of these.  Discharge of a nuclear weapon will be considered a warlike act even if accidental;

i. **bodily injury** to any **insured** within the meaning of part 9.a., 9.b., or 9.c. of the definition of **insured**.

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

This exclusion also applies to any claim made or suit brought against any *insured* within the meaning of part 9.a., 9.b., or 9.c. of the definition of *insured* to share damages with or repay someone else who may be obligated to pay damages because of the *bodily injury* sustained by any *insured* within the meaning of part 9.a., 9.b., or 9.c. of the definition of *insured*;

j.    any claim made or suit brought against any *insured* by:

(1)  any person in the care of any *insured* because of child care services provided by or at the direction of:

(a)  any *insured*;

(b)  any employee of any *insured*; or

(c)  any other person actually or apparently acting on behalf of any *insured*; or

(2)  any person who makes a claim because of *bodily injury* to any person in the care of any *insured* because of child care services provided by or at the direction of:

(a)  any *insured*;

(b)  any employee of any *insured*; or

(c)  any other person actually or apparently acting on behalf of any *insured*.

This exclusion does not apply to the occasional child care services provided by any *insured*, or to the part-time child care services provided by any *insured* under 19 years of age;

k.    *bodily injury* or *property damage* arising out of an *insured's* participation in, or preparation or practice for, any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft. This exclusion does not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power;

l.    *bodily injury* or *property damage* arising out of the use, sale, manufacture, distribution, delivery, transfer, or possession, by any *insured*, of any substance that is illegal or is a controlled substance under either federal or state law.

This exclusion does not apply to the legitimate use of legally prescribed drugs, under either federal or state law, by a person following orders of a licensed health care professional;

m.    *bodily injury* or *property damage* arising out of the actual, alleged, or threatened presence, discharge, dispersal, seepage, migration, release, escape of, or exposure to contaminants or pollutants at or from any source or location.

Contaminants and pollutants include but are not limited to any solid, liquid, gaseous, or thermal irritant, including smoke from agricultural smudging or industrial operations, smog, soot, vapor, fumes, acids, alkalis, chemicals, pathogens, noxious substances, fuel oil, asbestos, or lead.

This exclusion does not apply to *bodily injury* or *property damage* arising out of smoke or fumes caused by fire or explosion.

*We* also do not cover:

(1)  any loss, cost, or expense arising out of any request, demand, order, or statutory or regulatory requirement that any *insured* or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate, dispose of, or in any way respond to or assess the effects of contaminants or pollutants;

(2)  any loss, cost, or expense arising out of any claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or in any way responding to or assessing the effects of contaminants or pollutants; or

(3)  contamination or pollution arising out of actually or allegedly defective building materials, nuclear substances, or waste. Waste includes materials to be recycled, reconditioned, or reclaimed;

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

n. ***bodily injury*** or ***property damage*** arising out of any actual, alleged, or threatened:

   (1)  sexual harassment, sexual molestation, or sexual misconduct;

   (2)  physical or mental abuse; or

   (3)  corporal punishment;

   by the ***insured***;

o. ***bodily injury*** or ***property damage*** arising out of the actual, alleged, or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any ***fungus*** at or from any source or location.

   ***We*** also do not cover any loss, cost, or expense arising out of any:

   (1)  request, demand, order, or statutory or regulatory requirement that any ***insured*** or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate, dispose of, or in any way respond to or assess the effects of ***fungus***; or

   (2)  claim or suit for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or in any way responding to or assessing the effects of ***fungus***;

p. ***bodily injury*** or ***property damage*** arising out of the ownership, maintenance, or use of systems and equipment used to generate electrical power exceeding 125 percent of the actual electrical power usage by the ***residence premises*** in the 12-month period prior to the date of the loss; or

q. ***bodily injury*** or ***property damage*** that was a result of a criminal act or omission of the ***insured***.

   However, this exclusion does not apply to any ***insured*** who has not been convicted of a crime and has not entered a plea of guilty, no contest, or true in a criminal proceeding involving the same act or omission that is the basis of the claim against the ***insured***.

2. Coverage L does not apply to:

a. liability:

   (1)  for ***your*** share of any loss assessment charged against all members of any type of association of property owners; or

   (2)  imposed on or assumed by any ***insured*** through any unwritten or written contract or agreement.  This exclusion does not apply to liability for damages that the ***insured*** would have in absence of the contract or agreement;

b. ***property damage*** to property owned by any ***insured*** at the time of the ***occurrence***;

c. ***property damage*** to property rented to, used or occupied by, or in the care, custody, or control of any ***insured*** at the time of the ***occurrence***. This exclusion does not apply to ***property damage*** caused by fire, smoke, explosion, or abrupt and accidental damage from water;

d. ***bodily injury*** to a person eligible to receive any benefits required to be provided or voluntarily provided by an ***insured*** under a workers' compensation, non-occupational disability, or occupational disease law;

e. ***bodily injury*** or ***property damage*** for which an ***insured*** under this policy is also an insured under a nuclear energy liability policy or would be an insured but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors;

f. ***bodily injury*** or ***property damage*** arising out of any real property any ***insured*** has sold or transferred.  This includes but is not limited to ***bodily injury*** or ***property damage*** arising out of known, unknown, hidden, or alleged property conditions, problems, or defects.

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

This exclusion also applies to any *property damage* to the sold or transferred real property itself.

However, this exclusion does not apply to:

(1) *bodily injury* arising out of fire, smoke, explosion, electrocution, or carbon monoxide poisoning; or

(2) *property damage* arising out of fire, smoke, or explosion.

3. Coverage M does not apply to *bodily injury*:

a. to a *residence employee* if it occurs off the *insured location* and does not arise out of or in the course of the *residence employee's* employment by an *insured*;

b. to a person eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation, nonoccupational disability, or occupational disease law;

c. to a person other than a *residence employee* of an *insured*, regularly residing on any part of the *insured location*; or

d. from nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

## SECTION II – CONDITIONS

1. **Limit of Liability.** The Coverage L limit is shown in the *Declarations*. This is the limit for all damages from each *occurrence* for the policy period in which the *bodily injury* or *property damage* first occurs, regardless of the number of *insureds*, claims made, or persons injured. No additional limits or coverage will be available for the *occurrence* under any additional policy periods while this policy remains in force.

The Coverage M limit is shown in the *Declarations*. This is *our* limit for all medical expenses for *bodily injury* to one person as the result of one accident.

2. **Severability of Insurance.** This insurance applies separately to each *insured*. This condition does not increase *our* limit of liability for any one *occurrence*.

3. **Duties After Loss.** In case of an accident or *occurrence*, the *insured* must cooperate with *us* in the investigation, settlement, or defense of any claim or suit and also perform the following duties that apply. *You* must cooperate with *us* in seeing that these duties are performed:

a. give written notice to *us* or *our* agent as soon as possible, which sets forth:

(1) the identity of this policy and the particulars sufficient to identify the *insured*;

(2) reasonably available information on the time, place, and circumstances of the accident or *occurrence*; and

(3) names and addresses of any claimants and available witnesses;

b. immediately forward to *us* every notice, demand, summons, or other process relating to the accident or *occurrence*;

c. at *our* request, assist in:

(1) making settlement;

(2) the enforcement of any right of contribution or indemnity against a person or organization who may be liable to an *insured*;

(3) the conduct of suits and attend hearings and trials; and

(4) securing and giving evidence and obtaining the attendance of witnesses;

d. under **SECTION II – ADDITIONAL COVERAGES**, **Damage to Property of Others**, exhibit the damaged property if within the *insured's* control; and

e. the *insured* must not, except at the *insured's* own cost, voluntarily make payments, assume obligations, or incur expenses. This does not apply to expense for first aid to others at the time of the *bodily injury*.

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

With respect to items 3.a. and 3.b. above, failure to provide initial notice of a claim or any subsequent information required in conjunction with that claim as soon as possible will not invalidate a claim made by the *insured* if it is shown that it was not reasonably possible to do so and that the notice or information was provided as soon as it was reasonably possible.

4. **Coverage M Requirements.** *We* may require the following in regard to any Coverage M claim:

   a. written proof of claim, under oath if required, as soon as possible from the injured person, or when appropriate, someone acting on behalf of that person;

   b. the injured person's submission to physical examinations by a physician selected by *us* when and as often as *we* reasonably require; and

   c. any authorizations from the injured person as *we* may require.

5. **Payment of Claim – Coverage M or Damage to Property of Others.** Payment under either of these is not an admission of liability by an *insured* or *us*.

6. **Suit Against Us.** No action will be brought against *us* unless there has been compliance with the policy provisions.

   No one will have the right to join *us* as a party to an action against an *insured*. Further, no action with respect to Coverage L will be brought against *us* until the obligation of the *insured* has been determined by final judgment on the merits, after an actual trial or by an agreement signed by *us*; but *we* will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Liability.

   Subject to the above, action may be brought against *us* anytime within the limitation of the applicable statute, if *you* have an unresolved dispute related to:

   a. *our* responses to *your* requests concerning court proceedings; or

   b. how *we* handled *your* claim.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an *insured* will not relieve *us* of *our* obligation under this policy.

8. **Other Insurance – Coverage L.** This insurance is excess over any other valid and collectible insurance, subject to the following:

   a. When like insurance is written in another company, *we* shall not be liable under this policy for a greater portion of any loss than the applicable limit of liability stated in the *Declarations* bears to the total applicable limit of all valid and collectible insurance against such loss.

   b. This insurance is not excess over other insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTION I AND SECTION II – CONDITIONS

1. **Policy Period.** This policy applies only to loss under Section I or *bodily injury* or *property damage* under Section II that occurs during the period this policy is in effect.

2. **Concealment or Fraud.** This policy is void as to *you* and any other *insured* if *you* or any other *insured* under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

3. **Liberalization Clause.** If *we* adopt any revision that would broaden coverage under this policy without additional premium, within 60 days prior to or during the period this policy is in effect, the broadened coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions.** A waiver or change of any provision of this policy must be in writing by *us* to be valid. *Our* request for an appraisal or examination does not waive any of *our* rights.

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

5. **Cancellation.**

   a. *You* may cancel this policy by notifying *us* of the cancellation on or before the date of cancellation.

   b. *We* may cancel this policy only for the reasons stated in this condition. *We* will notify *you* in writing of the date cancellation takes effect. *Our* cancellation notice will be mailed to *you* at *your* address last known to *us* or *our* agent. Proof of mailing will be sufficient proof of notice:

      (1) When *you* have not paid the premium, *we* may cancel at any time by notifying *you* at least 10 days before the date cancellation takes effect. This condition applies whether the premium is payable to *us* or *our* agent or under any finance or credit plan.

      (2) When this policy has been in effect for less than 55 days and is not a renewal with *us*, *we* may cancel this policy only for reasons that conform to Michigan law. *We* may cancel by notifying *you* at least 30 days before the date cancellation takes effect.

      (3) When this policy has been in effect for 55 days or more, or at any time if it is a renewal with *us*, *we* may cancel:

         (a) if there has been a material misrepresentation of fact that, if known to *us*, would have caused *us* not to issue this policy; or

         (b) if the risk has changed substantially since this policy was issued.

         *We* may cancel this policy by notifying *you* at least 30 days before the date cancellation takes effect.

      (4) When this policy is written for a period longer than one year, *we* may cancel at anniversary but only for reasons that conform to Michigan law. *We* may cancel by notifying *you* at least 30 days before the date cancellation takes effect.

   c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. The return premium will be pro rata.

   d. The return premium may not be refunded with the notice of cancellation or when this policy is returned to *us*. In such cases, *we* will refund it within a reasonable time after the date cancellation takes effect.

6. **Nonrenewal.** *We* may elect not to renew this policy. If *we* elect not to renew, a written notice will be delivered to *you*, or mailed to *you* at *your* mailing address shown in the *Declarations*. The notice will be mailed or delivered at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

7. **Assignment of Policy.** Assignment of this policy will be void and *we* will not recognize any such assignment, unless *we* give *our* written consent.

8. **Subrogation and Reimbursement.**

   a. **Subrogation.**

      (1) Applicable to SECTION I:

         If any *insured* to or for whom *we* make payment under this policy has rights to recover damages from another, those rights are transferred to *us* to the extent of *our* payment. That *insured* must do everything necessary to secure *our* rights and must do nothing after loss to impair them. However before a loss, an *insured* may waive in writing all rights of recovery against any person.

      (2) Applicable to SECTION II:

         If any *insured* has rights to recover all or part of any payment *we* have made under this policy, those rights are transferred to *us*. An *insured* must do nothing after loss to impair them. At *our* request, an *insured* will bring suit or transfer those rights to *us* and help *us* enforce them.

      Subrogation does not apply under Section II to **Medical Payments to Others** or **Damage to Property of Others**.

   b. **Reimbursement.**

      If *we* make payment under this policy and any *insured* to or for whom *we* make payment recovers or has recovered from another person or

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

organization, then the *insured* to or for whom *we* make payment must:

    (1)  hold in trust for *us* the proceeds of any recovery; and

    (2)  reimburse *us* to the extent of *our* payment.

9.  **Death.** If *you* die:

    a.  *we* insure the legal representative of the deceased. This condition applies only with respect to the premises and property of the deceased covered under this policy at the time of death;

    b.  *insured* includes:

        (1)  any member of *your* household who is an *insured* at the time of *your* death, but only while a resident of the *residence premises*; and

        (2)  with respect to *your* property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

10.  **Conformity to State Law.** When a policy provision is in conflict with the applicable law of the state in which this policy is issued, the law of the state will apply.

11.  **Premium.**

    a.  Unless as otherwise provided by an alternative payment plan in effect with the *State Farm Companies* with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown in the most recently issued *Declarations*.

    b.  The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles, and other elements that affect the premium applicable at the time of renewal.

    c.  The premium for this policy may vary based upon:

        (1)  the purchase of other products or services from the *State Farm Companies*;

        (2)  the purchase of products or services from an organization that has entered into an agreement or contract with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization; or

        (3)  an agreement, concerning the insurance provided by this policy, that the *State Farm Companies* has with an organization of which *you* are a member, employee, subscriber, licensee, or franchisee.

    d.  *Your* purchase of this policy may allow:

        (1)  *you* to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the *State Farm Companies*, subject to their applicable eligibility rules; or

        (2)  the premium or price for other products or services purchased by *you*, including non-insurance products or services, to vary. Such other products or services must be provided by the *State Farm Companies* or by an organization that has entered into an agreement or contract with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization.

12.  **Right to Inspect.**

    a.  *We* have the right but are not obligated to perform the following:

        (1)  make inspections and surveys of the *insured location* at any time;

        (2)  provide *you* with reports on conditions *we* find; or

        (3)  recommend changes.

    Any inspections, surveys, reports, or recommendations relate only to insurability and the premiums to be charged.

    b.  *We* do not:

        (1)  make safety inspections;

        (2)  undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public;

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

(3) warrant that conditions are safe or health-ful; or

(4) warrant that conditions comply with laws, regulations, codes, or standards.

This condition applies to **us** and to any rating, advisory, rate service, or similar organization that makes insurance inspections, surveys, reports, or recommendations on **our** behalf.

13. **Joint and Individual Interests.**  When there are two or more Named Insureds, each acts for all to cancel or change this policy.

14. **Change of Policy Address.  We** may change the Named Insured's policy address as shown in the **Declarations** and in **our** records to the most recent address provided to **us** by:

a. **you**; or

b. the United States Postal Service.

15. **Electronic Delivery.**  With **your** consent, **we** may electronically deliver any document or notice, including a notice to renew, nonrenew, or cancel, instead of mailing it or delivering it by other means.  Proof of transmission will be sufficient proof of notice.

16. **Our Rights Regarding Claim Information.**

a. **We** will collect, receive, obtain, use, and retain all the items described in item b.(1) below and use and retain the information described in item b.(3)(b) below, in accordance with applicable federal and state laws and regulations and consistent with the performance of **our** business functions.

b. Subject to 16.a. above, **we** will not be restricted in or prohibited from:

(1) collecting, receiving, or obtaining records, receipts, invoices, medical bills, medical records, wage information, salary information, employment information, data, and any other information;

(2) using any of the items described in item b.(1) above; or

(3) retaining:

(a) any of the items in item b.(1) above; or

(b) any other information **we** have in **our** possession as a result of **our** processing, handling, or otherwise resolving claims submitted under this policy.

c. **We** may disclose any of the items in b.(1) above and any of the information described in item b.(3)(b) above:

(1) to enable performance of **our** business functions;

(2) to meet **our** reporting obligations to insurance regulators;

(3) to meet **our** reporting obligations to insurance data consolidators;

(4) to meet other obligations required by law; and

(5) as otherwise permitted by law.

d. **Our** rights under 16.a., 16.b., and 16.c. above will not be impaired by any:

(1) authorization related to any claim submitted under this policy; or

(2) act or omission of an **insured** or a legal representative acting on an **insured's** behalf.

17. **Duties Regarding Claim Information.**  An **insured** or a legal representative acting on an **insured's** behalf must provide **us** with any requested authorizations related to the claim.  **Our** rights as set forth under **Our Rights Regarding Claim Information** of this policy will not be impaired by any:

a. authorization related to the claim; or

b. act or omission of an **insured** or a legal representative acting on an **insured's** behalf.

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

## OPTIONAL POLICY PROVISIONS

Each Optional Policy Provision applies only as shown in the *Declarations* and is subject to all the terms, provisions, exclusions, and conditions of this policy.

**Option AI – Additional Insured.** The definition of *insured* is extended to include the person or organization shown in the *Declarations* as an Additional Insured or whose name is on file with *us*. Coverage is with respect to:

1. **SECTION I – Coverage A**, **Coverage B**, or **Coverage C**; or

2. **SECTION II – Coverage L** and **Coverage M** but only with respect to the *residence premises*. This coverage does not apply to *bodily injury* to an employee arising out of or in the course of the employee's employment by the person or organization.

This option applies only with respect to the location shown in the *Declarations*.

**Option BP – Business Property.** The **COVERAGE B – PERSONAL PROPERTY**, **Special Limits of Liability**, item b., for property used or intended for use in a *business*, including merchandise held as samples or for sale or for delivery after sale, is changed as follows:

The $1,500 limit is replaced with the amount shown in the *Declarations* for this option.

**Option BU – Business Pursuits**. **SECTION II – EXCLUSIONS**, item 1.b. is modified as follows:

1. Section II coverage applies to the *business* pursuits of an *insured* who is a:

   a. clerical office employee, salesperson, collector, messenger; or

   b. teacher (except college, university, and professional athletic coaches), school principal, or school administrator;

   while acting within the scope of the above listed occupations.

2. However, no coverage is provided:

   a. for *bodily injury* or *property damage* arising out of a *business* owned or financially controlled by the *insured* or by a partnership of which the *insured* is a partner or member;

   b. for *bodily injury* or *property damage* arising out of the rendering of or failure to render professional services of any nature (other than teaching or school administration). This exclusion includes but is not limited to:

      (1) computer programming, architectural, engineering, or industrial design services;

      (2) medical, surgical, dental, or other services or treatment conducive to the health of persons or animals; and

      (3) beauty or barber services or treatment;

   c. for *bodily injury* to a fellow employee of the *insured* injured in the course of employment; or

   d. when the *insured* is a member of the faculty or teaching staff of a school or college:

      (1) for *bodily injury* or *property damage* arising out of the maintenance, use, loading, or unloading of:

         (a) draft or saddle animals, including vehicles for use with them; or

         (b) aircraft, *motor vehicles*, recreational *motor vehicles* or watercraft, airboats, air cushions, or personal watercraft which use a water jet pump powered by an internal combustion engine as the primary source of propulsion;

      owned, operated, or hired by or for the *insured* or employer of the *insured* or used by the *insured* for the purpose of instruction in the use thereof; or

      (2) under **Coverage M** for *bodily injury* to a student arising out of corporal punishment administered by or at the direction of the *insured*.

**Option FA – Firearms.** Firearms are covered for accidental direct physical loss or damage.

The limits for this option are shown in the *Declarations*. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

1. *We* will not pay for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

   a. mechanical breakdown, wear and tear, or gradual deterioration;

   b. all animals, birds, or insects, including nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects. However, *we* will pay for losses caused by wild bears or deer;

   c. any process of refinishing, renovating, or repairing;

   d. dampness of atmosphere or extremes of temperatures;

   e. inherent defect or faulty manufacture;

   f. rust, fouling, or explosion of firearms;

   g. breakage, marring, scratching, tearing, or denting unless caused by fire, thieves, or accidents to conveyances; or

   h. infidelity of an *insured's* employees or persons to whom the insured property may be entrusted or rented;

2. *Our* limit for loss by any Coverage B peril except theft is the limit shown in the *Declarations* for Coverage B, plus the aggregate limit;

3. *Our* limits for loss by theft are those shown in the *Declarations* for this option. These limits apply in lieu of the Coverage B theft limit; and

4. *Our* limits for loss by any covered peril except those in items 2. and 3. above are those shown in the *Declarations* for this option.

**Option ID – Increased Dwelling Limit.** *We* will settle losses to damaged *building structures* covered under **COVERAGE A – DWELLING** according to the **Loss Settlement Provision** shown in the *Declarations*.

If the amount *you* actually and necessarily spend to repair or replace damaged *building structures* exceeds the applicable limit of liability shown in the *Declarations*, *we* will pay the additional amounts not to exceed:

1. the Option ID limit of liability shown in the *Declarations* to repair or replace the *dwelling*; or

2. 10% of the Option ID limit of liability to repair or replace *building structures* covered under **COVERAGE A – DWELLING**, **Other Structures**.

**Report Increased Values.** *You* must notify *us* within 90 days of the start of construction on any new *building structure* costing $5,000 or more; or any additions to or remodeling of *building structures* that increase their values by $5,000 or more. *You* must pay any additional premium due for the increased value. *We* will not pay more than the applicable limit of liability shown in the *Declarations* if *you* fail to notify *us* of the increased value within 90 days.

**Option IO – Incidental Business.** The coverage provided by this option applies only to that incidental *business* occupancy on file with *us*.

1. **COVERAGE A – DWELLING**, **Other Structures**, item 2.b. is deleted.

2. **COVERAGE B – PERSONAL PROPERTY** is extended to include equipment, supplies, and furnishings usual and incidental to this *business* occupancy. This Optional Policy Provision does not include electronic data processing system equipment or the recording or storage media used with that equipment or merchandise held as samples or for sale or for delivery after sale.

   The Option IO limits are shown in the *Declarations*. The first limit applies to property on the *residence premises*. The second limit applies to property while off the *residence premises*. These limits are in addition to the **COVERAGE B – PERSONAL PROPERTY**, **Special Limits of Liability** on property used or intended for use in a *business*.

3. Under Section II, the *residence premises* is not considered *business* property because an *insured* occupies a part of it as an incidental *business*.

4. **SECTION II – EXCLUSIONS**, item 1.b. is replaced with the following:

   b. *bodily injury* or *property damage* arising out of *business* pursuits of any *insured*, except as provided in item c. below. This exclusion does not apply to activities that are ordinarily incident to non-*business* pursuits or to *business* pursuits of an *insured* that are necessary or incidental to the use of the *residence premises* as an incidental *business*;

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

5. This insurance does not apply to:

   a. **bodily injury** to an employee of an **insured** arising out of the **residence premises** as an incidental **business** other than to a **residence employee** while engaged in the employee's employment by an **insured**;

   b. **bodily injury** to a student arising out of corporal punishment administered by or at the direction of the **insured**;

   c. liability arising out of any acts, errors, or omissions of an **insured**, or any other person for whose acts an **insured** is liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specifications, supervisory inspections, or engineering services in the conduct of an **insured's** incidental **business** involving data processing, computer consulting, or computer programming; or

   d. any claim made or suit brought against any **insured** by:

      (1) any person in the care of any **insured** because of child care services provided by or at the direction of:

         (a) any **insured**;

         (b) any employee of any **insured**; or

         (c) any other person actually or apparently acting on behalf of any **insured**; or

      (2) any person who makes a claim because of **bodily injury** to any person in the care of any **insured** because of child care services provided by or at the direction of:

         (a) any **insured**;

         (b) any employee of any **insured**; or

         (c) any other person actually or apparently acting on behalf of any **insured**.

   Coverage M does not apply to any person indicated in d.(1) and d.(2) above.

   This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** under 19 years of age.

**Option JF – Jewelry and Furs.** Jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones, gold other than goldware, silver other than silverware, and platinum are covered for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations**. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss. All provisions and exclusions of **SECTION I – LOSSES INSURED**, **COVERAGE B – PERSONAL PROPERTY**, **Theft** apply to Option JF.

The following additional provisions apply:

1. **We** will not pay for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

   a. mechanical breakdown, wear and tear, or gradual deterioration;

   b. all animals, birds or insects, including nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects. However, **we** will pay for losses caused by wild bears or deer;

   c. inherent vice; or

   d. seizure or destruction under quarantine or customs regulations;

2. **Our** limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. **Our** limits for loss by theft are those shown in the **Declarations** for this option. These limits apply in lieu of the Coverage B theft limit; and

4. **Our** limits for loss by any covered peril except those in items 2. and 3. above are those shown in the **Declarations** for this option.

**Option OL – Building Ordinance or Law.**

1. **Coverage Provided.** The total limit of insurance provided by this option will not exceed an amount equal to the Option OL percentage shown in the **Declarations** of the Coverage A limit shown in the **Declarations** at the time of the loss, as adjusted by the Inflation Coverage provisions of this policy. This is an additional amount of insurance and applies to **building structures** on the **residence premises**.

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

2. **Damaged Portions of *Building Structure*.** When a ***building structure*** covered under **COVERAGE A – DWELLING** is damaged by a ***loss insured***, ***we*** will pay for the increased cost to repair or rebuild the physically damaged portion of the ***building structure*** caused by the enforcement of a building, zoning, or land use ordinance or law if the enforcement is directly caused by the same ***loss insured*** and the requirement is in effect at the time the ***loss insured*** occurs.

3. **Undamaged Portions of Damaged *Building Structure*.** When a ***building structure*** covered under **COVERAGE A – DWELLING** is damaged by a ***loss insured***, ***we*** will also pay for:

   a. the cost to demolish and clear the site of the undamaged portions of the ***building structure*** caused by the enforcement of a building, zoning, or land use ordinance or law if the enforcement is directly caused by the same ***loss insured*** and the requirement is in effect at the time the ***loss insured*** occurs; and

   b. loss to the undamaged portion of the ***building structure*** caused by enforcement of any ordinance or law if:

      (1) the enforcement is directly caused by the same ***loss insured***;

      (2) the enforcement requires the demolition of portions of the same ***building structure*** not damaged by the same ***loss insured***;

      (3) the ordinance or law regulates the construction or repair of the ***building structure***, or establishes zoning or land use requirements at the described premises; and

      (4) the ordinance or law is in force at the time of the occurrence of the same ***loss insured***; or

   c. legally required changes to the undamaged portion of the ***building structure*** caused by the enforcement of a building, zoning, or land use ordinance or law, if:

      (1) the enforcement is directly caused by the same ***loss insured***;

      (2) the requirement is in effect at the time the ***loss insured*** occurs; and

      (3) the legally required changes are made to the undamaged portions of specific ***building structure*** features, systems, or components that have been physically damaged by the ***loss insured***.

   ***We*** will not pay for legally required changes to specific ***building structure*** features, systems, or components that have not been physically damaged by the ***loss insured***.

4. **Building Ordinance or Law Coverage Limitations.**

   a. ***We*** will not pay for any increased cost of construction:

      (1) until the ***building structure*** is actually repaired or replaced at the same or another premises in the same general vicinity;

      (2) unless the repairs or replacement are made as soon as reasonably possible after the loss, not to exceed two years; and

      (3) due to any original or subsequent construction, addition, modification, renovation, remodel, or repair to a ***building structure*** that did not comply with a building, zoning, or land use ordinance or law in effect when the construction, addition, modification, renovation, remodel, or repair was performed.

   b. ***We*** will not pay more under this coverage than the amount ***you*** actually spend:

      (1) for the increased cost to repair or rebuild the ***building structure*** at the same or another premises in the same general vicinity if relocation is required by ordinance or law; and

      (2) to demolish and clear the site of the undamaged portions of the ***building structure*** caused by enforcement of building, zoning, or land use ordinance or law.

HW-2122
© Copyright, State Farm Mutual Automobile Insurance Company, 2016

*We* will not pay for more than a ***building structure*** of the same height, floor area, and style on the same or similar premises as the ***building structure***, subject to the limit provided in paragraph 1. **Coverage Provided** of this option.

**Option SG – Silverware and Goldware Theft.** The **COVERAGE B – PERSONAL PROPERTY**, **Special Limits of Liability**, item i., for theft of silverware and goldware is increased to be the amount shown in the ***Declarations*** for this option.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2122